**In re BEST PRODUCTS COMPANY, INC., Debtor.**

**SANTA ANA BEST PLAZA, LTD., Movant,**

v.

**BEST PRODUCTS COMPANY, INC., Respondent.**

**Bankruptcy No. 96–35267–T. No. 96–1614.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Feb. 18, 1997.

William R. Baldwin, Hirschler Fleischer Weinberg Cox & Allen, Richmond, Virginia, for Movant.

H. Slayton Dabney, Jr., Douglas M. Foley, McGuire Woods Battle & Boothe, Richmond, Virginia, for Debtor.

## *MEMORANDUM OPINION*

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On January 30, 1997, the court held a hearing on Santa Ana's motion for relief from stay and on Santa Ana's motion to shorten the time in which the debtor must assume or reject a lease of commercial real property. The court, ruling from the bench, granted in part the motion to shorten time but took the motion for relief under advisement. For the reasons set forth in this memorandum opinion, the motion for relief will be denied.

**Findings of Fact and Procedural History**

The debtor is a publicly owned corporation which operated 11 jewelry stores and 169 large retail outlets in shopping centers and malls throughout the country. The debtor sold category-dominant assortments of fine jewelry and watches, as well as nationally advertised brand-name merchandise. The debtor conducted this business as a retail catalog showroom chain until early 1996, when changes in the market increased the need for price flexibility and promotions. Although the debtor attempted to restructure its operations during the summer of 1996, its outdated format and the short-term negative effects of eliminating its catalog were too much to overcome, and on September 24, 1996, the debtor filed a bankruptcy petition under Chapter 11.

Santa Ana is a California limited partnership which owns the Santa Ana Best Plaza Shopping Center in Orange County, California. By agreement dated January 10, 1977, Santa Ana's predecessor-in-interest leased the only anchor space in the Plaza to the debtor. The term of the lease commenced on September 26, 1977, and is scheduled to expire on September 30, 2002, subject to an option held by the debtor to extend the term for two additional ten-year periods.

Pursuant to the lease agreement, the debtor must pay to Santa Ana "as additional rent" a share of real estate taxes and common area maintenance expenses proportionate to the space it leases. With regard to the taxes specifically, Section 5.3 of the agreement directs Santa Ana to submit to the debtor a copy of each tax bill along with a statement computing the debtor's share. The debtor then must remit the funds to the landlord before the later of at least fourteen days before Santa Ana would be required to pay the taxes or fourteen days after the debtor receives its copy of the bill.

In the late fall of 1996, Santa Ana timely billed the debtor for its share of the real estate taxes for the entire second half of the year. By letter dated November 4, 1996, the debtor refused to pay any taxes which had accrued from July 1, 1996, to September 24, 1996, on the ground that those taxes constituted a pre-petition obligation which could not be paid as an administrative expense in bankruptcy. After the parties failed to reach a compromise, Santa Ana moved for relief from the automatic stay in order to declare the debtor in default under the lease for failing to remit the "additional rent" and to exercise its remedies under non-bankruptcy law.

**Discussion and Conclusions of Law**

■ Prior to 1984, landlords who leased premises to debtors-in-possession encountered significant obstacles to collecting rent and other post-petition charges as an administrative expense. *See* Joshua Fruchter, *To Bind or Not to Bind—Bankruptcy Code § 365(d)(3): Statutory Minefield*, 68 Am. Bankr.L.J. 437, 438 (1994). Not only did they have to maneuver through a rather cumbersome application process, but they were entitled to recover only the "reasonable value" of the debtor's "actual use" of the premises[1] and remained subject to the bankruptcy court's discretion to delay payment until after a plan had been confirmed. *Id.* Recognizing that these burdens were impos-

---

1. Before the 1984 amendments were enacted into law, 11 U.S.C. § 503(b)(1)(A) represented the only authority under which landlords could collect post-petition rent as an administrative expense. That subsection reads: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including: the actual, necessary costs and expenses of preserving the estate...."

ing unjustified costs on landlords throughout the country, Congress enacted 11 U.S.C. § 365(d)(3) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.

Section 365(d)(3), in pertinent part, provides:

> The trustee shall perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

While nearly all courts have concurred that this subsection improved a landlord's ability to recover post-petition rents and charges, "deciphering § 365(d)(3) has been akin to navigating a freshly sown battlefield—like hidden mines, each clause has triggered considerable debate as to its intent and meaning." Fruchter, *supra*, at 439. The truth in this analogy has been highlighted by a clear split on the issue raised in this case: whether a debtor-in-possession leasing nonresidential real property must pay in full all bills received from the landlord during the post-petition, pre-rejection period, regardless of whether some of those charges accrued pre-petition.

One group of courts in the minority has responded in the affirmative, adopting a strict "billing date" approach to the question. *See, e.g., In re F & M Distribs., Inc.*, 197 B.R. 829 (Bankr.E.D.Mich.1995); *In re Krystal Co.*, 194 B.R. 161 (Bankr.E.D.Tenn. 1996). These courts find § 365(d)(3) to be unambiguous and commit to following the "plain language" and "natural reading" of the subsection "without regard to any equitable or policy considerations." *In re F & M Distribs, Inc.*, 197 B.R. at 832; *In re Krystal Co.*, 194 B.R. at 163. Relying on a "clarity sufficient to preclude [them] from indulging or imposing ... notions of fairness and equity," *In re F & M Distribs., Inc.*, 197 B.R. at 832, they hold that the "obligation" to pay the tax bill "arises" on the date specified in the lease, or the date the bill comes due.

Another collection of courts in the minority has reached the same result, though by a slightly different route. *See, e.g., Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.)*, 150 B.R. 965 (D.Kan.1993); *In re R.H. Macy & Co.*, 152 B.R. 869 (Bankr. S.D.N.Y.1993), *aff'd*, 1994 WL 482948 (S.D.N.Y. Feb. 23, 1994). These courts at least implicitly acknowledge the "accrual" theory—under which a debtor need only pay those charges which can be allocated to the post-petition, pre-rejection period—but contend that the approach has no bearing on a lease similar to the one in this case. They point out that the debtor-in-possession under such a lease does not have a *statutory* "obligation" to pay an assessment, made by the relevant taxing authority, which admittedly might accrue on a daily basis throughout the year. Instead, the debtor has a *contractual* "obligation" to remit to the landlord "additional rent" equal to a share of the real estate taxes proportionate to the space leased. This obligation does not accrue or "arise" until the landlord submits the bill to the debtor, which in this case occurred "after the order for relief."

The vast majority of courts, in contrast, have found the "accrual" theory to be quite relevant in this setting. *See, e.g., Child World, Inc. v. Campbell/Massachusetts Trust (In re Child World, Inc.)*, 161 B.R. 571 (S.D.N.Y.1993); *Schneider & Reiff v. William Schneider, Inc. (In re William Schneider, Inc.)*, 175 B.R. 769 (S.D.Fla.1994); *In re Handy Andy Home Improvement Ctrs., Inc.*, 196 B.R. 87 (Bankr.N.D.Ill.1996); *In re Victory Mkts., Inc.*, 196 B.R. 6 (Bankr.N.D.N.Y. 1996); *In re Warehouse Club, Inc.*, 184 B.R. 316 (Bankr.N.D.Ill.1995); *In re All for A Dollar, Inc.*, 174 B.R. 358 (Bankr.D.Mass. 1994); *In re Almac's, Inc.*, 167 B.R. 4 (Bankr.D.R.I.1994). They depart from the minority at the outset, finding § 365(d)(3) to be ambiguous as to when the debtor's "obligation" arises under a lease to reimburse the landlord for real estate taxes. As a result, they rely heavily on the legislative history behind the subsection, from which they glean that Congress sought only to ensure that landlords received "current payment" for "current services" provided. In other words, they can discern "[n]othing in the legislative

history [to indicate] that Congress intended § 365(d)(3) to overturn the long-standing practice under § 503(b)(1) of prorating debtor-tenants' rent to cover only the postpetition, prerejection period, regardless of billing date." *In re Child World, Inc.,* 161 B.R. at 575–76.

 After weighing all three approaches to the question, this court will follow the reasoning of the majority. Although the term "obligation" might well be unambiguous, as the minority courts contend when referring to its contractual nature in this setting, the time at which that obligation "arises" under § 365(d)(3) is subject to more than one reasonable interpretation. This being the case, the court must construe the subsection so that it "is not self-contradictory or otherwise irrational" and in such a way that "its true meaning provides a rational response to the relevant situation."[2] *Salomon Forex, Inc. v. Tauber,* 8 F.3d 966, 975 (4th Cir.1993), *cert. denied,* 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994).

 Congress enacted § 365(d)(3) to guarantee that landlords would not be placed at a disadvantage for providing post-petition services to the debtor. Put another way, Congress intended the subsection to put landlords on an equal footing, not to grant them a windfall at the expense of other creditors. *See In re Child World, Inc.,* 161 B.R. at 576. The minority view has the potential to produce results sharply at odds with this purpose. For instance, where a debtor filed its petition shortly before an annual or multi-year tax bill comes due, a court adhering to the rigid minority construction would be required to give administrative priority to a claim which accrued largely pre-petition.

 In short, this court finds that the approach followed by the minority courts would radically alter "the priority and distribution scheme under the Bankruptcy Code."

**2.** Indeed, "even within the fluctuating walls of the 'plain meaning' fortress, a court should not resolve questions of statutory interpretation so that a particular Bankruptcy Code section conflicts and disturbs the overall purpose and function of the Code." *In re R.H. Macy & Co.,* 170 B.R. 69, 73 (Bankr.S.D.N.Y.1994) (citations omitted).

*In re All for A Dollar, Inc.,* 174 B.R. at 361. In contrast, the majority's spin on the "accrual theory" appears to serve not only the interests of the debtor but those of the landlord and other creditors as well. *See In re Victory Mkts., Inc.,* 196 B.R. at 10. The court therefore holds that the debtor's obligation under the lease to pay its share of real estate taxes[3] as "additional rent" accrues on a daily basis and that, under § 365(d)(3), post-petition bills must be prorated so that the debtor pays as an administrative expense only those charges which accrued during the post-petition, pre-rejection period.

### Conclusion

For the reasons stated, a separate order will be entered denying Santa Ana's motion for relief from stay.

### *ORDER*

For the reasons set forth in the memorandum opinion accompanying this order,

IT IS ORDERED that the movant's motion for relief from stay is denied.

**3.** The parties have offered no reason to distinguish between these real estate taxes and other charges billed as "additional rent" post-petition, such as common area maintenance expenses. The court therefore finds that this holding would apply equally to all such charges.