## In re McCRORY CORPORATION, et al., Debtors.

Morris W. NEWMAN, et al. ("Landlord No. 1"); Equitable Real Estate Co., Ltd., ("Landlord No. 2"); Leah Green, Rose Helene Summerfield, Theodor Zacks, Sylvia Taylor, Peter B. Krivel–Zacks and Melanie Zacks Gold ("Landlord No. 4"); and John W. Ormond, et al. ("Landlord No. 5"), Appellants,

v.

McCRORY CORPORATION, Appellee.

No. 96 Civ. 4576 (DC).

United States District Court, S.D. New York.

July 31, 1997.

Fried, Frank, Harris, Shriver & Jacobson by Ira Sacks, New York City, for McCrory Corp.

White & Case by Andrew DeNatale, New York City, for Official Committee of Unsecured Creditors.

Office of U.S. Trustee by Mary Tom, New York City, for Trustee.

Gerard G. Metzger, New Orleans, LA, for Lessors.

### *OPINION*

CHIN, District Judge.

In this bankruptcy appeal, the debtor McCrory Corporation ("McCrory") obtained an order from the bankruptcy court authorizing it to reject certain leases effective February 5, 1996. McCrory had been required under the leases to pay real estate taxes. Just a few days before the rejection date, however, real estate taxes for the entire year became due. The issue presented is whether, under § 365(d)(3) of the Bankruptcy Code, McCrory was obligated to pay the full year's taxes or just a prorated amount. The bankruptcy court (Blackshear, J.) held that McCrory was obligated only to pay property taxes prorated to cover the period from January 1, 1996 until the lease rejection date of February 5, 1996, rather than the entire amount billed for the 1996 calendar year. For the reasons stated below, I affirm the decision of the bankruptcy court.

### *BACKGROUND*

A. *The Facts*

On February 26, 1992, McCrory and twenty-six of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary bankruptcy petitions under Chapter 11 of the Bankruptcy Code. The Debtors are presently

managing their properties and operating their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

When the Debtors filed their Chapter 11 petitions, McCrory operated its store No. 229 at certain premises in New Orleans, Louisiana (the "Premises"). McCrory leased portions of the Premises from Morris W. Newman, Jon O. Newman and Claire P. Newman ("Landlord No. 1"); Equitable Real Estate Company, Ltd. ("Landlord No. 2"); Leah Green, Rose Helene Summerfield, Theodore Zacks, Sylvia Taylor, Peter B. Krivel–Sacks and Melanie Zacks Gold ("Landlord No. 4"); and John W. Ormond, *et al.* ("Landlord No. 5") (hereinafter collectively referred to as "the Lessors"). These four landlord groups, the Lessors, are the appellants in this action.[1] Each of the leases provides, in relevant part, that McCrory agrees to pay all taxes charged, assessed or imposed on the Premises when due and payable. Most, though not all, of the tax bills at issue were sent by the City of New Orleans to the appropriate landlord, "c/o McCRORY CORP. TAX DEPT., 2955 E. Market St., York, PA 17402."

In late 1995, McCrory decided to close store No. 229. Accordingly, by applications dated December 21, 1995 and January 25, 1996 (collectively the "Application"), McCrory sought to reject the various leases. McCrory conducted a bankruptcy court authorized going-out-of-business sale from December 31, 1995 until January 20, 1996. By January 21, 1996, McCrory ceased all operations at the store. On January 30, 1996, McCrory vacated the Premises. In the Application, McCrory sought to reject the Leases effective January 31, 1996, though the presentment date for the Application was February 5, 1996. The Lessors objected solely to the effective date of the rejection requested by McCrory.

In January 1996, the City of New Orleans prospectively issued tax bills for the real estate taxes owing with respect to the Premises for the entire year of 1996 (the "Taxes"). The Taxes were due to be paid by January 31, 1996. By motion dated March 4, 1996, the Lessors sought to compel McCrory to pay all of the Taxes. McCrory objected.

### B. *The Decision of the Bankruptcy Court*

The bankruptcy court held a hearing on March 28, 1996 on the Application and the Taxes. At the hearing, the bankruptcy court approved the rejection of the Leases effective February 5, 1996, because the delay in a decision beyond that date was solely the result of the Lessors' objections. (March 28 Hearing Tr. at 10). At the conclusion of the hearing, the bankruptcy court held "that the 1996 taxes shall be prorated so that the Debtor is responsible for only the amount of taxes covering from the period of January 1, 1996 until the rejection date." (*Id.*). The bankruptcy court reasoned as follows:

> The Court is persuaded by those cases holding that the Debtor's obligation under a lease of nonresidential real property should be prorated to cover the postpetition, prerejection period regardless of the fortuity of the billing date. For that proposition see *In re Child World, Inc.*, 161 B.R. 571, 576 (S.D.N.Y. 1993); and *In re Ames Department Stores, Inc.*, 150 B.R. 107 (Bkrtcy S.D.N.Y. 1993).

(*Id.* at 11). On April 15, 1996, the bankruptcy court entered a written order entitled "Order Authorizing McCrory Corporation To Reject Five Leases And Denying Motion Of Landlords To Compel Payment Of Real Estate Taxes (Store No. 229/New Orleans, Louisiana)" (the "Lease Rejection Order") memorializing its rulings at the hearing.

The Lessors appeal under 28 U.S.C. § 158 from the Lease Rejection Order, seeking reversal of that order on the grounds that "the rationale and findings of the Bankruptcy Court are tainted by legal error." (Lessor's Appeal Mem. at 7).

### DISCUSSION

### A. *Standard of Review*

The bankruptcy court's legal conclusions are reviewed de novo by the district court.

---

1. McCrory leased the remaining portion of the Premises from Elizabeth Ricau Fisher, Jackson G. Ricau and Katherine S. Ricau, who are not party to this appeal.

*In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988 (2d Cir.1990), *cert. denied,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991).

## B. *Section 365(d)(3)*

Section 365(d)(3) of the Bankruptcy Code governs the obligations of a debtor-tenant to its landlord between the time a bankruptcy petition is filed and the time a debtor-tenant assumes or rejects the lease (the "postpetition, prerejection period").[2] Section 365(d)(3), added as an amendment to the Bankruptcy Code in 1984, provides in relevant part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in Section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

Prior to the 1984 enactment of § 365(d)(3), the payment of postpetition lease obligations prior to assumption or rejection of an unexpired lease was governed by 11 U.S.C. § 503(b)(1). *See generally* 3 Collier on Bankruptcy, § 503.04 at 524–28 (15th ed.1991). Section 503(b)(1) provided for the allowance of administrative expenses, including "the actual, necessary costs and expenses of preserving the estate." *See* 11 U.S.C. § 503(b)(1). Pursuant to this subsection, courts ordinarily allowed as an administrative expense the full amount of the rent at the contract rate, so long as it was not clearly unreasonable, but prorated that rent over the postpetition, prerejection period. *See, e.g., Palmer v. Palmer,* 104 F.2d 161, 163 (2d Cir.), *cert. denied,* 308 U.S. 591, 60 S.Ct. 121, 84 L.Ed. 494 (1939); *In re Dunwoody Village Sporting Goods, Inc.,* 11 B.R. 493, 494 (Bankr.N.D.Ga.1981); *In re Keyboard Center, Inc.,* 9 B.R. 472, 474 (Bankr.D.Conn. 1981); *In re Standard Furniture Co.,* 3 B.R.

527, 529–30 (Bankr.S.D.Cal.1980). Furthermore, when the lease required the debtor-tenant to reimburse the landlord for real estate taxes, the courts only allowed as an administrative expense a prorated payment of real estate taxes over the postpetition, prerejection period, regardless of the billing date. *See, e.g., Matter of J. Bain, Inc.,* 554 F.2d 255 (5th Cir.1977); *Matter of Lackow Bros., Inc.,* 18 B.R. 770, 772 (Bankr.S.D.Fla. 1982); *In re Keyboard Center, Inc.,* 9 B.R. at 475; *In re CRS Architectural Metals Corp.,* 1 B.R. 729, 732 (Bankr.E.D.N.Y.1979).

The enactment of § 365(d)(3) eliminated the bankruptcy court's discretion to alter the amount of the rent to be paid under the lease. 3 Collier on Bankruptcy, § 503.04 at 527. Instead, § 365(d)(3) requires debtor-tenants to provide landlords of nonresidential property full and timely payment for services due under an unexpired lease during the postpetition, prerejection period. *See* 11 U.S.C. § 365(d)(3) ("[t]he trustee shall timely perform all the obligations of the debtor"). Although the legislative history of this provision is rather sparse, Senator Hatch issued a statement confirming that the purpose of the section was to alleviate the burden previously placed on landlords:[3]

> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code.... A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments under the lease. In this situation, *the landlord is forced to provide current services—the use of its property, utilities, security, and other services— without current payment.* No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to

---

**2.** For ease of reference, I call this the "postpetition, prerejection period," though "postpetition, preassumption or rejection period" would be a more complete description.

**3.** Apparently, no Senate or House report was submitted with the legislation, nor did the House

conference report contain a joint explanatory statement. Only Senator Hatch appears to have addressed the proposed amendment that became § 365(d)(3). *See In re Child World, Inc.,* 161 B.R. 571, 575 n. 6 (S.D.N.Y.1993).

compensate for the trustee's failure to make the required payments for the debtor. This bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

H.R.Conf.Rep. No. 882, 98th Cong., 2d Sess. (1984), reprinted in 1984 U.S.C.C.A.N. 576 (emphasis added). Congress did not explicitly address whether obligations owed under a lease should be prorated, consistent with pre-amendment practice, albeit at the contract rate.

## C. The Bankruptcy Court's Decision To Prorate The Taxes

Here, the bankruptcy court ordered that McCrory "pay real estate taxes for the Premises prorated to cover only the period until the Rejection Date." (Lease Rejection Order at 2). The Lessors disagree with the bankruptcy court's reading of § 365(d)(3) and argue instead that McCrory's real estate tax-related lease obligations had to be paid in full at the time they came due under the leases. Since the City of New Orleans bills property owners prospectively for an entire tax year at once, rather than in more frequent installments, the Lessors argue that McCrory was obligated to pay the full 1996 tax bills. Thus, the issue before me is whether, under § 365(d)(3), when a debtor-tenant is obligated under a lease to pay real estate taxes, the debtor-taxpayer must pay a full year's taxes or a prorated amount, when an annual tax payment falls due in the postpetition, prerejection period and the payment would cover taxes for a substantial postrejection period as well.

## D. The Caselaw

The courts are split on the issue. No case on the propriety of proration under § 365(d)(3) has reached the Second Circuit yet, nor has any other circuit ruled on the subject. Though not binding on me, numerous district courts and bankruptcy courts

have addressed the issue generally. Many of the cases, however, involve obligations that actually accrued prepetition.

### 1. The Majority View

The majority of courts considering the general issue have adhered to the long-standing, pre–1984 practice of prorating payment of a debtor's obligations under a lease, regardless of the billing date. See, e.g., In re All for A Dollar, Inc., 174 B.R. 358, 361–62 (Bankr.D.Mass.1994); In re Almac's, Inc., 167 B.R. 4, 7 (Bankr.D.R.I.1994); In re Child World, Inc., 161 B.R. 571, 576–77 (S.D.N.Y. 1993); In re Ames Dept. Stores, Inc., 150 B.R. 107 (Bankr.S.D.N.Y.1993); In re RB Furniture, Inc., 141 B.R. 706, 712 (Bankr. C.D.Cal.1992); In re Revco D.S., Inc., 111 B.R. 626, 628–29 (Bankr.N.D.Ohio 1989); In re S & F Concession, Inc., 55 B.R. 689, 690–91 (Bankr.E.D.Pa.1985); In re Warehouse Club, Inc., 184 B.R. 316, 317–18 (Bankr. N.D.Ill.1995); Matter of Swanton Corp., 58 B.R. 474, 475 (Bankr.S.D.N.Y.1986). The majority requires payment under § 365(d)(3) only of those taxes that can be said to have "accrued" during the prerejection period, regardless of the billing date. See In re Child World, Inc., 161 B.R. at 576–77; In re All for A Dollar, Inc., 174 B.R. at 361–62.

These majority courts find § 365(d)(3) to be ambiguous as to when the debtor's "obligation" to reimburse the landlord for real estate taxes arises under a lease. As a result, they rely heavily on the legislative history behind the subsection, from which they glean that Congress sought only to ensure that landlords received "current payment" for "current services" provided. See, e.g., In re Child World, Inc., 161 B.R. at 575. In other words, they discern "[n]othing in the legislative history [to indicate] that Congress intended to overturn the longstanding practice under § 503(b)(1) of prorating debtor-tenants' rent to cover only the postpetition, prerejection period, regardless of billing date." Id. at 575–76.

### 2. The Minority View

A substantial minority of courts, however, have held that under § 365(d)(3), a debtor-

tenant under a nonresidential property lease must pay in full all bills received from the landlord during the postpetition, prerejection period, regardless of when those charges accrued. *See, e.g., In re Appletree Markets, Inc.,* 139 B.R. 417, 418–21 (Bankr.S.D.Texas 1992); *In re Duckwall–ALCO Stores, Inc.,* 150 B.R. 965, 974–76 (D.Kan.1993); *In re Child World, Inc.,* 150 B.R. 328, 331–32 (Bankr.S.D.N.Y.1993), *rev'd,* 161 B.R. 571 (S.D.N.Y.1993); *In re R.H. Macy & Co., Inc.,* 152 B.R. 869, 872–74 (Bankr.S.D.N.Y.1993), *aff'd,* No. 93–4414, 1994 WL 482948 (S.D.N.Y. Feb. 23, 1994); *Matter of F & M Distribs., Inc.,* 197 B.R. 829, 831–33 (Bankr. E.D.Mich.1995); *In re Krystal Co.,* 194 B.R. 161, 162–64 (Bankr.E.D.Tenn.1996).

These courts find § 365(d)(3) to be unambiguous and purport to follow the "plain language" and "natural reading" of the subsection without regard to any equitable or policy considerations. *See In re F & M Distribs., Inc.,* 197 B.R. at 832; *In re R.H. Macy & Co., Inc.,* 152 B.R. at 873–74; *In re Krystal Co.,* 194 B.R. at 163. In analyzing the language of § 365(d)(3), these courts find the words "obligation" and "arise" sufficiently unambiguous so as to make it clear that real estate taxes must be paid in full, without proration, at the time they come due under the terms of the lease, during the prerejection period. *See In re Krystal Co.,* 194 B.R. at 162; *In re F & M Distribs., Inc.,* 197 B.R. at 831–32.

The leases here require the tenant to pay all taxes when due and payable. Louisiana law provides that the "collection of taxes shall begin on the first day of January ... [and] shall become delinquent on the first day of February." LA.REV.STAT.ANN. § 47:1997(B) (West 1990). The minority

courts would presumably find that the taxes were an obligation arising in the postpetition, prerejection period, and therefore that the tenant was obligated to pay the tax bills in their entirety. *See also In re Best Products Co.,* 206 B.R. 404, 405–06 (Bankr.E.D.Va. 1997) (distinguishing between minority courts adopting a strict "billing date" approach and those acknowledging the "accrual" approach, but finding it inapplicable where the tenant's obligation under the lease is to reimburse the landlord for taxes rather than a statutory obligation to pay the taxing authority).

### 3. *The Southern District of New York*

In the Southern District of New York, Judges Goettel and Sotomayor have addressed the issue and reached different conclusions. In *In re Child World, Inc.,* Judge Goettel found proration of the debtor's tax bill during the postpetition, prerejection period appropriate.[4] Judge Goettel first analyzed whether the term "obligations" as used in § 365(d)(3) provides any guidance with respect to the issue of whether a debtor-tenant's lease obligations must be prorated. *See* 161 B.R. at 573–74. After concluding that § 365(d)(3) was ambiguous on this issue, he turned to the legislative history of § 365(d)(3). In Judge Goettel's view, the legislative history suggested that § 365(d)(3) was enacted to prevent landlords from becoming involuntary postpetition creditors of the debtor; the section was enacted "to ensure that landlords received 'current payment' for their 'current services.'" *Id.* at 575. However,

[n]othing in the legislative history indicates that Congress intended § 365(d)(3) to

---

4. The appellants rely on *In re Child World, Inc.,* 150 B.R. 328 (Bankr.S.D.N.Y.1993), for the proposition that § 365(d)(3) precludes proration of postpetition, prerejection payment of rent obligations, due under an unexpired lease, including real estate tax reimbursement. Appellants assert that *In re Child World, Inc.,* 161 B.R. 571 (S.D.N.Y.1993), does not in fact reverse the bankruptcy court's decision in *In re Child World, Inc.,* despite clear language in the district court's decision to the contrary. Appellants claim that "these are two entirely separate cases." (Lessors' Br. at 9).

Appellants are correct in noting that the facts in the two opinions are in conflict. In the bankruptcy court decision, the real estate taxes at issue were "assessed for the second half of fiscal year 1992, namely, the period from July of 1992 through December of 1992." *In re Child World, Inc.,* 150 B.R. at 330. In the district court decision, the real estate taxes at issue were "assessed for the second half of fiscal year 1992, namely, the period from January to June of 1992." *In re Child World, Inc.,* 161 B.R. at 572. Despite this discrepancy, it is clear that the district court disagreed with and reversed the bankruptcy court's interpretation of § 365(d)(3).

overturn the long-standing practice under § 503(b)(1) of prorating debtor-tenant's rent to cover only the postpetition, prerejection period, regardless of the billing date.... Allowing landlords to recover items of rent which are billed during the postpetition, prerejection period, but which represent payment for services rendered by the landlord outside this time period, would grant landlords a windfall payment, without any support from the legislative history.

*Id.* at 576. Moreover, Judge Goettel found that this interpretation coincides with the policy of preserving the priority and distribution scheme established by the Bankruptcy Code. *Id.; see also In re RB Furniture, Inc.,* 141 B.R. at 712.

Judge Sotomayor, however, reached a different conclusion. *See In re R.H. Macy & Co.,* No. 93–4414, 1994 WL 482948 (S.D.N.Y. Feb. 23, 1994), *aff'g* 152 B.R. 869 (Bankr. S.D.N.Y.1993). In affirming the bankruptcy court's decision, Judge Sotomayor found that the word "obligation," as used in the context of § 365(d)(3), was "clear and unambiguous." *In re R.H. Macy & Co.,* 1994 WL 482948, at *12. In response to the argument that the term "obligation" covers unmatured obligations falling under the Bankruptcy Code's definition of a "claim," she explained that Congress knew what "claim" meant when it drafted § 365(d)(3), having used it in numerous other sections of the Code, and that Congress could have used it in § 365(d)(3) had it desired to. While she found the "policy aspects of [Judge Goettel's] argument very persuasive, [she viewed it as] very much a judicial philosophy issue as to whether or not or how much the clear, plain meaning of words should be strained because of policy questions or legislative history." *Id.* at *13.

### E. *The Instant Case*

■ After reviewing the different approaches, I adopt the reasoning of the majority. While the term "obligation" itself may be unambiguous, the language of § 365(d)(3) simply does not answer the question at hand. The phrase "arising from and after the order for relief under any unexpired lease of nonresidential real property" is far from clear.

Nor is it clear whether the phrase "until such lease is assumed or rejected" limits the "obligation" in question to those actually accruing before rejection. Accordingly, I find it useful to turn to the legislative history of § 365(d)(3), as well as the overall operation of the Code, for guidance in construing § 365(d)(3).

In recent cases interpreting the Bankruptcy Code, the Supreme Court has tempered its application of the plain meaning rule, particularly when it would effect a major change in practice under the Code as it existed at the time, unless there is support for such a change in the legislative history. As the Second Circuit has explained:

When Congress amends the bankruptcy laws, it does not write on a clean slate.... Furthermore, [the Supreme Court] has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a change in pre-Code practice that is not the subject of at least some discussion in the legislative history.

*In re Klein Sleep Products, Inc.,* 78 F.3d 18, 27 (2d Cir.1996) (quoting *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992)); *In re R.H. Macy & Co., Inc.,* 170 B.R. 69, 73 (Bankr.S.D.N.Y.1994) ("even within the fluctuating walls of the 'plain meaning' fortress a court should not resolve questions of statutory interpretation so that a particular Bankruptcy Code section conflicts and disturbs the overall purpose and function of the Code") (citations omitted); *In re 680 Fifth Ave. Assocs.,* 156 B.R. 726, 734 n. 12 (Bankr.S.D.N.Y.), *aff'd,* 169 B.R. 22 (S.D.N.Y.1993), *aff'd,* 29 F.3d 95 (2d Cir. 1994); *see also In re Child World, Inc.,* 161 B.R. at 575–76; *In re Handy Andy Home Improvement Centers, Inc.,* 196 B.R. 87, 94–95 (Bankr.N.D.Ill.1996).

Here, neither the language of the statute nor the legislative history reveals a Congressional intent to deviate from the pre-amendment practice of prorating lease obligations pending rejection, other than to require "current payment" for "current services." Rather, "Congress enacted § 365(d)(3) to ensure that landlords would not be disadvantaged by

providing post-petition services to the debtor. Put another way, Congress intended the sub-section to put landlords on an equal footing, not to grant them a windfall at the expense of other creditors." *In re Best Products Co.,* 206 B.R. at 406–07 (citation omitted) The approach followed by the minority of courts would drastically alter the priority and distri-bution scheme under the Bankruptcy Code. *Accord id.; In re Child World, Inc.,* 161 B.R. at 576; *In re All for A Dollar, Inc.,* 174 B.R. at 361; *In re RB Furniture, Inc.,* 141 B.R. at 712.

Reliance strictly on the billing date would result in a windfall either to the landlord or to the debtor-tenant. A windfall would flow to the landlord here if McCrory were re-quired to pay the 1996 real estate taxes in full, since the landlord would have recovered taxes for the coming year and could then relet the property and recover again fully or partially for those same tax bills. At the same time, McCrory would be required to pay a year's worth of taxes even though it was only in possession for one month before the leases were rejected. On the other hand, a windfall would flow to the debtor-tenant where annual taxes for the coming year fell due one day before the petition is filed, and thus get paid pro-rata along with all other unsecured, pre-petition creditors. *See* 11 U.S.C. §§ 502(b)(6), 502(g). Neither scenar-io can be what Congress had in mind when it acted to ensure that landlords received time-ly payment for the services they were forced to provide pending assumption or rejection of the lease.

I am also unpersuaded by the argument that alternative remedies exist in the Code. *See, e.g. In re Krystal Co.,* 194 B.R. at 164; Joshua Fruchter, *To Bind or Not to Bind—Bankruptcy Code § 365(d)(3): Statutory Minefield,* 68 Am.Bankr.L.J. 437, 460–62 (1994). There is no indication that Congress intended to modify pre-Code practice to elim-inate proration under these circumstances, in light of any other remedies that might be available under the Code.

In contrast, the majority view ap-pears to serve not only the interests of the debtor but those of the landlord and other creditors as well. *See In re Victory Markets, Inc.,* 196 B.R. 6, 10 (Bankr.N.D.N.Y.1996); *In re Best Products Co.,* 206 B.R. at 406–07. The majority reasoning is particularly com-pelling, and the shortcomings of the minori-ty's application of the plain meaning rule are especially evident, on the facts before me in this case. In addition, "[t]he bankruptcy court is essentially a court of equity ... [and it] applies the principles and rules of equity jurisprudence." *In re Ionosphere Clubs, Inc.,* 85 F.3d 992, 999 (2d Cir.1996) (citations omitted); *see also American United Mut. Life Ins. Co. v. City of Avon Park, Fla.,* 311 U.S. 138, 145, 61 S.Ct. 157, 161–62, 85 L.Ed. 91 (1940); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 57, 109 S.Ct. 2782, 2798–99, 106 L.Ed.2d 26 (1989). I therefore hold that the debtor-tenant's obligations under the lease to pay real estate taxes accrues on a daily basis and that, under § 365(d)(3), postpetition bills must be prorated so that the debtor only pays those charges accruing during the post-petition, prerejection period.[5]

### CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is affirmed in all re-spects.

SO ORDERED.

---

5. Because I decide that proration is appropriate under § 365(d)(3), I need not reach the issue of whether the terms of the leases require pro-ration. In addition, because the Lessors have not prevailed on this appeal, they are not even

arguably entitled to attorneys' fees under the lease provisions providing that the lessee is re-sponsible for attorneys' fees incurred by the les-sor in enforcing the lease obligations. Accord-ingly, I need not reach this legal issue either.