**In re TRAVEL 2000, INC., Debtor.**

No. SG 01–01069.

United States Bankruptcy Court, W.D. Michigan.

May 10, 2001.

Harold E. Nelson, Borre Peterson Fowler & Reens PC, Grand Rapids, MI, for debtor.

Ian I. Allen, Kupelian Ormond & Magy, PC, Southfield, MI, Eddirland Duncan Christel, Palmer & Dodge LLP, Boston, MA, Andrew S. Conway, Miro Weiner & Kramer PC, Bloomfield Hills, MI, Nancy E. Everett, The Rouse Company, Columbia, MD, Michael A. Fagone, Goulston & Storrs PC, Boston, MA, Niclas A. Ferland, Tyler Cooper & Alcorn, New Haven, CT, Deborah L. Fish, Allard & Fish, PC, Detroit, MI, Francis L. Gorman, III, Attorney at Law, Rochester, NY, Gina Baker Hantel, Nashville, TN, Terry L. Hoeksema, Doornbos and Hoeksema, Grand Rapids, MI, Jack C. Jordan, Attorney for the City of Lansing, Lansing, MI, Jeffrey Kurtzman, Klehr Harrison Harvey Branzburg & Ellers LLP, Philadelphia, PA, Scott K. Levine, Platzer Swergold Karlin Levine Goldberg & Jaslow LLP, New York City, Jeffrey Meyers, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, Philip G. Mitchell, Jennings Haug & Cunningham LLP, Phoenix, AZ, Kevin M. Newman, Menter Rudin & Trivelpiece PC, Syracuse, NY, David L. Pollack, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, Douglas B. Rosner, Goulston & Storrs, PC, Boston, MA, Daniel Sheridan, Chicago, IL, Donald A. Snide, Varnum Riddering Schmidt & Howlett, Grand Rapids, MI, Mary Kay Stacey, Varnum Riddering Schmidt & Howlett, Grand Rapids, MI, Ronald M. Tucker, Simon Property Group, LP, Indianapolis, IN, Dean C. Waldt, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, Jay L. Welford, Jaffe, Raitt, Heuer & Weiss, Detroit, MI, Norman C. Witte, Norman C. Witte Law Offices, Lansing, MI, Jonathan D. Yellin, Riemer & Braunstein, LLP, Boston, MA, for creditor.

### OPINION AND ORDER GRANTING MOTIONS TO COMPEL PAYMENT OF RENT

JO ANN C. STEVENSON, Bankruptcy Judge.

This matter comes before the Court on the Motions of Urban Retail Properties (URP) and RAK Old South Associates (RAK) to Compel Payment of Rent pursuant to 11 U.S.C. § 365 of the Bankruptcy Code. This Court has jurisdiction under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(A).

On February 2, 2001, Travel 2000, Inc. (Debtor) filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Since that date it has continued to operate its business and manage its properties as a debtor-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

The Debtor occupied four stores in shopping centers managed by URP [1] and one

---

1. Genesee Valley Mall, Monmouth Mall, Manhattan Mall and Shops at the Mart

store in a building managed by RAK.[2] The leases of these stores all provide that rent becomes due on the first of the month for that month.

Pursuant to an Order entered by the Honorable Jeffrey R. Hughes, these leases and several others were rejected[3] effective February 28, 2001. The Debtor has not paid post-petition rent for the period of February 2–28, 2001[4] arguing that under *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986 (6th Cir.2000); *In re ½ Off Card Shop, Inc.*, Case No. 00–48425–WS (Bankr. E.D.Mich. March 7, 2001); and 11 U.S.C. § 365(d)(3) it is not required to do so.

11 U.S.C. § 365(d)(3) governs the obligations of a debtor-tenant to its landlord between the time a bankruptcy petition is filed and the time a debtor-tenant assumes or rejects the lease. The statute provides in pertinent part:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

The Sixth Circuit examined this statute in *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986 (6th Cir.2000) and found it to be clear and unambiguous. The Court determined that when a lease is a month-to-month, payment-in-advance lease, and the lease payment comes due during the postpetition, prerejection time period, a lessor is entitled to the full month's rent, regardless of how many days after the rent became due the bankruptcy was filed. Specifically, the Court stated:

Under the terms of the lease the debtor was obligated to pay Morse $8,500 in advance on the first of each month for that month's rent. The specific obligation to pay rent for December 1997 arose on December 1, which was during the postpetition, prerejection period. Under these circumstances, § 365(d)(3) is unambiguous as to the debtor's rent obligation and requires payment of the full month's rent.

This interpretation of the statute has come to be known as the "performance date approach." Under this theory, "any amount coming due under a lease in the postpetition, prerejection period must be paid in full by the debtor without regard to whether the payment pertains to a prepetition or postrejection benefit." *In re Koenig Sporting Goods, Inc.*, 229 B.R. 388, 390 (6th Cir. BAP 1999). A minority of districts has adopted this approach. See *Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.)*, 150 B.R. 965 (D.Kan.1993); *In re Krystal Co.*, 194 B.R. 161 (Bankr.E.D.Tenn.1996); *In re F & M Distributors, Inc.*, 197 B.R. 829 (Bankr. E.D.Mich.1995); *In re Appletree Markets, Inc.*, 139 B.R. 417 (Bankr.S.D.Tex.1992).

To the contrary, a majority of courts have adopted what is known as the "proration approach." Under this view, a debtor is required by 11 U.S.C. § 365(d)(3) to pay only those amounts due under a lease that pertain to the benefits realized by the estate during the postpetition, prerejection period regardless of when the payment became due. See *Newman v.*

---

**2.** 296 Washington Street, Boston, Massachusetts

**3.** In all, 43 leases were rejected.

**4.** The rent due for the month of February is as follows: Genesee Valley Mall—$5,753.09; Monmouth Mall—$4,996.34; Manhattan Mall—$16,589.04; Shops at the Mart—$2,732.28; 296 Washington Street—$9,678.43.

*McCrory Corp. (In re McCrory Corp.)*, 210 B.R. 934 (S.D.N.Y.1997); *In re Almac's, Inc.*, 167 B.R. 4 (Bankr.D.R.I.1994); *In re Revco D.S., Inc.*, 111 B.R. 626 (Bankr. N.D.Ohio 1989); *Santa Ana Best Plaza, Ltd. v. Best Products Co. (In re Best Products Co.)*, 206 B.R. 404 (Bankr.E.D.Va. 1997); *In re All for A Dollar, Inc.*, 174 B.R. 358 (Bankr.D.Mass.1994); *In re William Schneider, Inc.*, 175 B.R. 769 (S.D.Fla.1994).

The Honorable Walter Shapero in *In the Matter of The½ Off Card Shop, Inc.*, Case No. 00–48425–WS (Bankr.E.D.Mich. March 7, 2001) took the Sixth Circuit's analysis in *Koenig* one step further. In *½ Off Cards*, the rent under the leases was due on the first of each month for that month. The Debtor filed bankruptcy on June 2, 2000 and rejected the leases. The Debtor did not pay the June rent arguing that it was not required to do so under 11 U.S.C. § 365(d)(3). Judge Shapero found that because the obligation did not "arise from [or] after an order for relief," the landlords held a prepetition claim for the full amount of the June rent.

█ The Debtor argues that its February rent obligation originated on February 1, 2001. Consequently, it did not fall within the postpetition, prerejection period under 11 U.S.C. § 365(d)(3). Because the Sixth Circuit found the language of the statute unambiguous, the analysis still applies even when the due date for the rent payment falls outside of the postpetition, prerejection period. In other words, the statute does not become ambiguous simply because the claim falls outside the period enumerated in the statute. In addition the Debtor argues, Judge Shapero's ruling in *½ Off Cards* is correct and the landlords have nothing more than a prepetition claim for rent, not an administrative claim and certainly not a claim under § 365(d)(3).

The landlords, on the other hand, posit that *Koenig* only applies when the claim arises in the postpetition, prerejection period. Accordingly, this Court is not bound by the Sixth Circuit's conclusion that 11 U.S.C. § 365(d)(3) is unambiguous. Therefore the door is open to further analysis and even the conclusion that the proration approach is the appropriate means to classify the landlords' claims.

In pertinent part, 11 U.S.C. § 365(d)(3) states that a trustee shall timely perform all the obligations of the debtor, except those specified in § 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding § 503(b)(1). The issue raised under the present motion is whether the Debtor's obligation to the Lessor "arose" before the entry of the order for relief and whether it was an "obligation of the debtor ... arising from or after the order of relief" within the meaning of the section.

First, we think it helpful to revisit *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986 (6th Cir.2000) and its forebears. In *In re Koenig Sporting Goods, Inc.*, 221 B.R. 737 (Bankr.N.D.Ohio 1998), the Bankruptcy Court found: "it would appear that § 365(d)(3) was intended to assure the landlord payment of the ordinary monthly rent payments which become due in the post-petition, pre-rejection period."

> Since Congress was no doubt well aware that rental is usually paid monthly in advance, it is not really possible to reconcile § 365(d)(3) with according the Debtor the option not to pay its monthly rent when due, even though payment would impinge to some extent upon normal bankruptcy principles and priorities ... Whether this same conclusion would follow if the Court were faced with the issue of awarding the landlord a year's

rental for two days occupancy, in the unlikely event rent was payable yearly in advance, is an open question. Logic would demand the same result, but the lack of precision and clarity in the language of § 365(d)(3) may indicate that Congress intended the courts to exercise some discretion where an inflexible approach to § 365 would severely distort fundamental bankruptcy principles.

*Id.* at 741.

When addressing the same issue in *In re Koenig Sporting Goods, Inc.,* 229 B.R. 388 (6th Cir. BAP 1999) the Bankruptcy Appellate Panel postulated: "Left for another day is the question whether ambiguities of interpretation arise under § 365(d)(3) when a nonresidential lease requires substantial payments in arrears or imposes obligations that are fundamentally inconsistent with the other provisions of the Bankruptcy Code." *Id.* at 394.

On appeal, the Sixth Circuit found that the debtor in *Koenig* was obligated under the terms of the lease to pay rent in advance and that the obligation arose during the post-petition, pre-rejection period. The Sixth Circuit specifically stated that "under these circumstances" the statute is unambiguous and requires payment of a full month's rent.

■ "[A] court should not resolve questions of statutory interpretation so that a particular Bankruptcy Code section conflicts and disturbs the overall purpose and function of the Code." *In re R.H. Macy & Co.,* 170 B.R. 69, 73 (Bankr. S.D.N.Y.1994). The overall purpose and function of the Bankruptcy Code is to strike a balance between creditor protection and debtor relief. With this in mind, we find that *Koenig* narrowly addressed the application of 11 U.S.C. § 365(d)(3) to the specific facts presented in that case, those being that the lease payment came due during the postpetition, prerejection

time period. It did not dictate the same result in other circumstances, especially in cases where the same conclusion would be fundamentally inconsistent with the Bankruptcy Code. We find that under the present circumstances and the facts with which we are presented, we are not bound by the Sixth Circuit's decision in *Koenig.* We also respectfully decline to follow the reasoning of *½ Off Card Shops.*

A Bankruptcy Code fundamental specifically relating to Chapter 11, is the allowance of priority status to post-petition claims so that the debtor can keep doing business so long as current revenues cover current costs of operation. This is relevant to any borrowing, trade or other transactions in which the debtor engages after filing bankruptcy.

The remarks of Senator Orrin Hatch in the legislative history of 11 U.S.C. § 365(d)(3) support this principle in the context of the landlord/debtor relationship. He states:

[T]he landlord is forced to provide current services—the use of his property, utilities, security, and other services without current payments. No other creditor is put in this position ... The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area charges, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong.Rec. S8887, S8994–95 (daily ed. June 29, 1984).

Had a trade creditor of Travel 2000 sent a bill for goods on the first of the month, with the goods arriving on the third; when Travel 2000 filed bankruptcy on the second

the creditor would have the option of awaiting payment or demanding return of the goods. The creditor would not be required to both forfeit the goods and the payment. If the trade creditor decided to continue dealing with the debtor post-petition, it would do so voluntarily and thus knowingly assume the risk of not being fully compensated. The landlord, on the other hand, is forced, involuntarily, to deal with the debtor/tenant until the debtor rejects the lease. Under the performance date approach of § 365(d)(3), the landlord would not be paid. We believe this result constitutes an iniquitous application of the Bankruptcy Code. It may also be a step toward violating the involuntary servitude prohibition of the Thirteenth Amendment[5] to the United States Constitution.

"While the general spirit of the phrase 'involuntary servitude' is easily comprehended, the exact range of conditions it prohibits is harder to define." *United States v. Kozminski*, 487 U.S. 931, 943, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988).

There have been limited cases addressing whether a corporation has rights under the Thirteenth Amendment. See *United States v. Tivian Laboratories, Inc.*, 589 F.2d 49 (1st Cir.1978) (ruling based on assumption that corporations have rights under the Thirteenth Amendment); *Howard Security Services, Inc. v. Johns Hopkins Hospital*, 516 F.Supp. 508 (D.Md. 1981) ("[O]bvious implication of this Court's reading of the debates is that it is at least arguable that corporations have an action under [the Thirteenth Amendment]").

There is sparse authority discussing the relationship between the Thirteenth Amendment and the provisions of the Bankruptcy Code. Congress was not unaware that the prohibition against involuntary servitude loomed in bankruptcy, and therefore concentrated its concern primarily on the area of involuntary chapter 13 petitions. 11 U.S.C. § 303(a). Consequently, the few cases that analyze the Thirteenth Amendment's relevance to bankruptcy law do so in this context.

In *Flood v. Kuhn*, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972), the Supreme Court held that a showing of compulsion is a prerequisite to proof of involuntary servitude. "A condition of involuntary servitude exists when the victim has no available alternative but to work or be subject to legal sanction or physical harm." *Kaveney v. Miller*, No. 93–0218, 1993 WL 298718 (E.D.Pa. July 30, 1993). "The essence of indentured servitude is the premise that the employee must have no other alternative." *Id.* at *2. "The availability of choice, however painful, renders a claim for involuntary servitude invalid." *United States v. Shackney*, 333 F.2d 475, 487 (2nd Cir.1964).

No other case has broached the subject of involuntary servitude in the context of a creditor-landlord providing services involuntarily without compensation.[6] The closest example we found was in *Commercial Bank v. Price (In re Notchcliff Associates)*, 139 B.R. 361 (Bankr.D.Md.1992), where the court briefly discussed Robert Rosenberg's article "Partnership Reorganization Under the Bankruptcy Reform

---

5. The Thirteenth Amendment specifically provides:

Section 1. Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

6. By way of reminder, we are referring only to the rent obligation from February 2–28, 2001 known as "stub" rent. On information and belief, the Debtor has been diligently paying its post-petition rent, starting March 1, 2001 during the pendency of its Chapter 11.

Act: Filling in the Interstices," 56 N.Y.U.L.Rev. 1773 (1981) which found, "It may be involuntary servitude to require a partner to remain in the relationship of a partner and incur liability for postconfirmation obligations."

Although we do not have to determine the lurking constitutional question at this juncture, we do see certain similarities between a victim forced to work involuntarily for no pay and the position of a landlord, forced to involuntarily provide services for a debtor, and remaining unpaid under the performance date approach of § 365(d)(3).

When applying 11 U.S.C. § 365(d)(3) to the circumstances of the case before us, ambiguity emanates from the words "arises" and "obligation." An "obligation" can "arise" when it comes due and payable or when it accrues. *In the Matter of Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir.1998). The Bankruptcy Code does not define the term "obligation." However, as discussed in *In re Learningsmith, Inc.*, 253 B.R. 131 (Bankr.D.Mass.2000):

> If obligation were interpreted to refer to the entire amount that matures and becomes payable on a given date, without regard to whether any part of the amount accrued prepetition, then § 365(d)(3) would conflict with, and constitute an exception to the provisions governing claims. Section 365(d)(3) expressly indicates that it is meant to constitute an exception to the provisions of the Code governing administrative expenses, which are strictly postpetition in nature, but it does not state that it is meant to constitute an exception to the provisions governing claims.

Therefore, even though the landlords' claims arose prepetition, the obligations of both the landlords and the Debtor arose post-petition. Consequently, we find that the rent due falls under the purview of § 365(d)(3). We also find that the landlords are to be paid on a prorata basis.

These conclusions are supported by the limited legislative history available regarding this statute. In *Newman v. McCrory Corp. (In re McCrory Corp.)*, 210 B.R. 934 (S.D.N.Y.1997), the court decided that Congress only intended to protect the landlord's right to payment for services he was obligated to provide during the postpetition, prerejection period. Therefore, "[c]ontinuing the longstanding use of the proration approach carries out Congressional intent." *In re Koenig Sporting Goods, Inc.*, 229 B.R. 388 (6th Cir. BAP1999) (Rhodes, S., dissenting).

Also agreeing with these conclusions is a Sixth Circuit case which looks at a similar issue under 11 U.S.C. § 502(b)(6)(B). In *Vause v. Capital Poly Bag, Inc. (In re Vause)*, 886 F.2d 794 (6th Cir.1989) the debtor's lease required annual rent payments in arrears. A payment became due four days after the bankruptcy petition was filed. The Court determined that under § 502(b)(6)(B), "Congress intended to compensate landlords for their actual damages while placing a limit on large, future, speculative damages which would displace other creditors' claims." *Id.* at 801–02. The Court also observed: "The lower courts' interpretation of the section in a way which eliminates past damages based on the fortuity of the filing date does not comport with the balance Congress has attempted to strike between the affected parties." *Id.* at 803.

These conclusions are also consistent with the practice of the bankruptcy courts prior to the enactment of § 365(d)(3). Before 1984, courts applied the proration approach under 11 U.S.C. § 503(b)(1) to "allow as an administrative expense the full amount of the rent, as long as it was not clearly unreasonable, prorated over the postpetition, prerejection period." *Child*

*World, Inc. v. Campbell/Massachusetts Trust (In re Child World, Inc.)*, 161 B.R. 571, 574 (S.D.N.Y.1993). "Nothing in the legislative history indicates that Congress intended § 365(d)(3) to overturn the long-standing practice under § 503(b)(1) of pro-rating debtor-tenant's rent to cover only the postpetition, prerejection period, regardless of billing date." *Id.* at 575–76.

 The United States Supreme Court has also held that it "would not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

Consequently, we find that Travel 2000's responsibility to pay rent crystallized on the first of the month thereby giving rise to the landlords' claims. However, the Debtor's obligation arose each day in the month of February until it vacated the premises and the landlords were free to re-lease the space. The Debtor wanted the continued occupancy of the leased property to conduct its going-out-of-business sales. To get this benefit it should be required to pay the full rent under the lease for every day that it continued to occupy the property after the bankruptcy filing.

## ORDER GRANTING MOTION OF URBAN RETAIL PROPERTIES AND RAK OLD SOUTH ASSOCIATES TO COMPEL PAYMENT OF RENT

NOW, THEREFORE, IT IS HEREBY ORDERED that for the reasons stated in the attached opinion, the Motion of Urban Retail Properties to Compel Payment of Rent is GRANTED.

IT IS FURTHER ORDERED that copies of this Opinion and Order shall be served by first-class United States mail, postage prepaid, upon Harold E. Nelson, Esq., Ian I. Allen, Esq., Robert E.L. Wright, Esq., Mary Kay Stacey, Esq., Jonathan D. Yellin, Esq., Eric J. Haber, Esq. and Daniel M. Katlein, Esq.