**In re HQ GLOBAL HOLDINGS, INC., et al., Debtors.**

No. 02–10760 (MFW).

United States Bankruptcy Court, D. Delaware.

Aug. 2, 2002.

---

Daniel J. DeFranceschi, Esquire, Russell C. Silberglied, Esquire, Etta R. Wolfe, Esquire, Richards Layton & Finger, P.A., Wilmington, DE, Corinne Ball, Esquire, Andrew L. Buck, Esquire, Jones, Day, Reavis & Pogue, New York City, for Debtors.

David M. Fournier, Esquire, Aaron A. Garber, Esquire, Pepper Hamilton, LLP, Wilmington, DE, for Prudential Ins. Co. and Reckson.

Thomas J. Leanse, Esquire, Dustin P. Branch, Esquire, Katten Muchin Zavis Rosenman, Los Angeles, CA, for Prudential Ins. Co.

Richard L. Claman, Esquire, Stempel Bennett Claman & Hochberg, P.C., New York City, for Reckson.

John D. Demmy, Esquire, Stevens & Lee, P.C., Wilmington, DE, for Trizec Holdings, Inc. and Park Avenue Properties, LLC.

Janice Duban, Esquire, Piper Rudnick, LLP, Chicago, IL, for Trizec Holdings, Inc.

Benjamin Hoch, Esquire, Eric M. Kay, Esquire, Dewey Ballantine LLP, New York City, for Park Avenue Properties, LLC.

Maria Aprile Sawczuk, Esquire, Saul Ewing LLP, Wilmington, DE, Robert J. Gage, Esquire, Edward S. West, Esquire, Covington & Burling, Washington, DC, for RREEF Management Co. as Agent for TMT Demonet, Inc.

Derek C. Abbott, Esquire, Morris Nichols Arsht & Tonnell, LLP, Wilmington, DE, Gregg D. Josephson, Esquire, Latham & Watkins, New York City, for 666 Fifth, L.P. and Gateway I Newark, LLC.

Michael P. Morton, Esq., Michael P. Morton, P.A., Wilmington, DE, David N. Ravin, Esquire, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Mack–Cali Realty, L.P.

David L. Finger, Esquire, David L. Finger, P.A., Wilmington, DE, Deborah J. Israel, Esquire, J. David Folds, Esquire, Piper Rudnick, LLP, Washington, DC, for Carr America Realty Corporation, et al.

Lance T. Eisenberg, Esquire, Lowenstein Sandler, P.C., Roseland, NJ, Counsel for S/K W.V.R. Associates.

Stephen M. Miller, Esquire, Christina M. Maycen, Esquire, Morris James Hitchens & Williams, LLP, Wilmington, DE, for Crescent Brookdale Associates, LLC.

*OPINION* [1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Motions of various Landlords [2] for immediate payment of rent for the post-petition

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

2. The landlords are Trizec Holdings, Inc., RREEF Management Company, as Agent for TMT Demonet, Inc., Prudential Insurance

Company of America Co. ("Prudential"), Crescent Brookdale Associates, LLC, Reckson, Park Avenue Properties Associates LLC, S/K W.V.R. Associates, 666 Fifth L.P., Mack–Cali Realty L.P., Mack Cali Realty Associates L.L.C., Carr America Realty Corporation, Carr Development and Construction, L.P., Carr Realty, L.P., and Gateway 1 Newark LLC (collectively "the Landlords").

portion of March 2002 ("the Stub Rent"). HQ Global Holdings, Inc. and certain of its affiliates (collectively "the Debtors") objected to the Landlords' Motions. For the reasons set forth below, we deny the Motions without prejudice and defer the liquidation and payment of the Stub Rent until after the Debtors have determined whether to assume or reject the Landlords' leases.

## I. BACKGROUND

The Debtors are tenants under numerous unexpired non-residential leases. Under each of the leases, the annual rent is payable in monthly installments in advance. With respect to each of the Landlord's leases, the Debtors did not pay the monthly rent due on March 1 for the month of March 2002.

On March 13, 2002 ("the Petition Date") the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. On May 7, 2002, Prudential filed a Motion to Compel Immediate Payment of Post–Petition Rent for the March 2002 "Stub" Period. The other Landlords have either joined the Motion of Prudential or filed similar Motions. In each Motion, the Landlords seek immediate payment, under section 365(d)(3) and/or section 503(b) of the Bankruptcy Code, of the Stub Rent for the 19–day period from the Petition Date through March 31, 2002. Most of the leases have not yet been assumed or rejected by the Debtors. On June 18, 2002, the Debtors filed an objection to the Landlords' Motions and a hearing was held on June 25, 2002.

## II. JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III. DISCUSSION

The Landlords seek the immediate payment of the Stub Rent as an administrative claim pursuant to sections 365(d)(3) and/or 503(b)(1)(A) of the Bankruptcy Code.

### A. Section 365(d)(3)

■ The Landlords assert that section 365(d)(3) requires the Debtors to pay the Stub Rent immediately. Section 365(d)(3) provides that:

> The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3). The Landlords argue that the Stub Rent is an obligation that arises after the Petition Date and, as such, must be timely performed. They argue that rent is due for each day that the Debtors occupied the property, on a pro-rata basis. The Debtors argue instead that the March rent is a pre-petition obligation since it was due in full on March 1. Therefore, the Debtors assert that there is no rent due post-petition until April 1, which was paid in full when due.

We conclude that the Landlords' pro-rata argument must be rejected because of the Third Circuit's ruling in *Montgomery Ward. In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d Cir.2001). In *Montgomery Ward* the debtor had a commercial real estate lease which required it to pay its landlord real estate taxes in addition to base rent. *Id.* at 207. Four days after the bankruptcy filing, the landlord presented an annual tax bill to the debtor and demanded payment in full even though the majority of the taxes had accrued pre-petition. *Id.* The debtor ten-

dered only a prorated amount based on its post-petition occupancy. *Id.*

The Bankruptcy Court and District Court held that the debtor need pay only the prorated amount. The Third Circuit reversed, expressly rejecting the pro-rata approach. The Third Circuit held that Congress, in adopting section 365(d)(3), intended a debtor to perform all leasehold obligations as they came due. The Court concluded that such an "obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform." *Id.* at 209. Thus, it concluded that the taxes were due in full because the lease in question required their payment when a bill was presented, not on a pro-rata basis. *Id.*

In this case the Debtors were obligated to pay the entire March rent in advance on March 1, 2002. The leases do not require payment on a pro-rata basis. The Debtors were therefore legally obligated to pay the March rent before the Petition Date. Thus, we cannot conclude that section 365(d)(3) requires the payment of the Stub Rent.

B. *Section 503(b)*

▮ Alternatively, the Landlords assert that the Debtors must immediately pay the Stub Rent as an administrative expense claim pursuant to section 503(b) of the Bankruptcy Code. Section 503(b) provides in relevant part that:

After notice and a hearing, there shall be allowed administrative expenses, . . . including-

(1)(A) the actual, necessary costs and expenses of preserving the estate.

11 U.S.C. § 503(b). A lessor is generally entitled to an administrative claim under section 503(b) for the fair rental value of the lessor's property actually used by the debtor. *See, e.g., Zagata Fabricators, Inc.*

*v. Superior Air Products,* 893 F.2d 624, 627 (3d Cir.1990); *In re Cornwall Paper Mills Co.,* 169 B.R. 844, 851 (Bankr.D.N.J. 1994). The Debtors do not dispute that the Landlords have an administrative claim for the Stub Rent pursuant to section 503(b). Instead, the Debtors dispute the amount and the timing of payment of the Stub Rent.

Section 503 provides that an entity can request payment of an administrative expense which may be allowed after notice and a hearing. 11 U.S.C. § 503(a)-(b). Section 503, however, does not address the question of when a claim for administrative expense is to be paid. *See, e.g., In re Standard Furniture,* 3 B.R. 527, 532 (Bankr.S.D.Cal.1980).

▮ The determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court. *See, e.g., In re Colortex Industries, Inc.,* 19 F.3d 1371, 1384 (11th Cir.1994); *In re Verco Industries,* 20 B.R. 664, 665 (9th Cir. BAP 1982); *In re Baptist Medical Center of New York, Inc.,* 52 B.R. 417, 421 (E.D.N.Y.1985). In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets. *Id.* Thus, distributions prior to confirmation of a plan are usually disallowed when the estate may not be able to pay all administrative expenses in full. *Standard Furniture,* 3 B.R. at 532. Other factors include the particular needs of each administrative claimant and the length and expense of the case's administration. *See, e.g., In re Reams Broadcasting Corp.,* 153 B.R. 520, 522 (Bankr. N.D.Ohio 1993); *In re Barron,* 73 B.R. 812, 814 (Bankr.S.D.Cal.1987).

Here, the Debtors do not assert that the estate is not able to pay all administrative

expenses in full. Instead, the Debtors dispute the amount of the Stub Rent to be paid to the Landlords. The Debtors assert that the contract rate in the leases is not necessarily the fair rental value for the premises. The Debtors suggest that some of the premises have been vacant and as such the Stub Rent should be adjusted accordingly. They assert a full hearing on all these issues will be protracted and may require expert testimony.

The Debtors argue that we should defer the liquidation and payment of the Stub Rent until after the Debtors have decided to assume or reject the leases. The Debtors assert that waiting until the decision to reject is preferable because, with respect to those leases that are ultimately rejected, the Stub Rent should be offset by any section 365(d)(3) overpayment made in the future. Specifically, the Debtors assert that if they make a rent payment on the first of the month but reject a lease on the tenth of the month, then the per diem rental value for the days after the tenth should be offset against the Stub Rent. Consequently, the Debtors assert that any determination of the amount of the Stub Rent should be deferred.

█ We disagree with the Debtors' offset argument. That theory assumes that the Debtors are entitled to a refund or rebate for that portion of their rent payment that covered a post-rejection period. The Debtors essentially want to prorate the monthly rent payment and pay only for the days that the Debtors occupied the premises. We must reject that argument in light of the Third Circuit's decision in *Montgomery Ward* which expressly rejected "proration." *Id.,* 268 F.3d at 209–10. Under *Montgomery Ward,* the rent for the entire month is due on the first of the month and, if the Debtors occupy the premises on the first, they must pay that entire sum. Therefore, we conclude that

the Debtors cannot recover the rent paid in excess of the days used or apply it against the Stub Rent.

However, the Debtors argue that deferral of a decision on the amount and payment of landlord's section 503(b) claims is still warranted. The Debtors anticipate that many, if not most, of the leases will be assumed. If the Debtors assume the leases, then they will be required to cure the defects pursuant to section 365(b)(1) and make all payments, including the Stub Rent, at the contract rate. That cure payment would moot the Stub Rent Motion. The Debtors assert that proceeding with discovery and litigation on the Stub Rent Motions now would be unnecessary and wasteful as to the leases which are ultimately assumed.

█ The Landlords counter that the issue of the Stub Rent will not involve protracted discovery and litigation. There is generally a presumption that "the rental value fixed in the lease will control, unless there is convincing evidence that such rental rate is unreasonable." *In re F.A. Potts & Co., Inc.,* 137 B.R. 13, 18 (E.D.Pa. 1992). *See also Cornwall,* 169 B.R. at 851. The Landlords argue that in this case the Debtors cannot rebut the presumption that the contract rate is fair because the Debtors pay, on an ongoing basis, the rent due under the leases pursuant to section 365(d)(3). The Landlords argue that if the Debtors did not think that the contract rate was fair, then they would not continue to pay rent on an ongoing basis and would, instead, reject the leases. As such, the Landlords assert that there can be no dispute that the contract rate is the fair rental value.

We disagree. The Landlords essentially suggest that by making payments under section 365(d)(3) the debtor is conceding that fair rental value is the contract rate. However, section 365(d)(3) mandates that

the Debtors make monthly payments at the contract rate regardless of what the fair rental value actually is. The Debtors do not have the option of paying the fair rental value under section 365(d)(3). Nor do we conclude that, by asking for an extension of the time to decide whether to assume or reject the leases, the Debtors have determined that the contract rate is the fair market value. Such a request for an extension is usually based on the fact that the Debtors have numerous leases and sixty days is an insufficient period within which to analyze them all or analyze the Debtor's prospects for a reorganization if it assumes them. We cannot conclude that because the Debtors comply with the Bankruptcy Code pending completion of their analysis whether to assume or reject the leases, they are admitting that the contract rate is the fair rental value.

■ However, we agree with the Debtors' assertion that any decision on the amount and payment of the Stub Rent must await the Debtors' decision whether to assume or reject the leases. Assumption of the leases will moot the issue for many of the Landlords. Currently, the Debtors anticipate reorganizing on its present business model which depends on retaining these leases. Postponing the liquidation of each Stub Rent claim will reduce legal fees for both the Debtors and the Landlords and be more economic and efficient of judicial resources. Therefore, we conclude that liquidation and payment of the Stub Rent should be deferred until after the Debtors decide to assume or reject the leases.

Alternatively, the Landlords seek to have the Stub Rent (calculated at the contract rate) segregated pending assumption or rejection of the leases. The Landlords assert that as involuntary participants in this case they are exposed to the risk of an insolvent estate.

We disagree. Segregating the Stub Rent has the same effect as providing adequate protection or granting a security interest to the Landlords. Such rights have no basis in the Bankruptcy Code and go beyond the rights granted under section 365(d)(3) or 503(b). We cannot conclude that the Landlords should have greater rights than other section 503(b) claimants.

### IV. CONCLUSION

For the foregoing reasons, we will not determine the amount or order the payment of any Stub Rent until after the Debtors have determined whether to assume or reject their leases.

An appropriate Order is attached.

### *ORDER*

AND NOW, this **2ND** day of **AUGUST, 2002,** upon consideration of the Motions of Various Landlords [3] for immediate payment of rent for the post-petition portion of March 2002, HQ Global Holdings, Inc.'s Objection, and for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the Landlords' Motions for immediate payment of the Stub Rent will be **DENIED** without prejudice to the

---

**3.** The landlords are Trizec Holdings, Inc., RREEF Management Company, as Agent for TMT Demonet, Inc., Prudential Insurance Company of America Co., Crescent Brookdale Associates, LLC, Reckson, Park Avenue Properties Associates LLC, S/K W.V.R. Associates, 666 Fifth L.P., Mack–Cali Realty L.P., Mack Cali Realty Associates L.L.C., Carr America Realty Corporation, Carr Development and Construction, L.P., Carr Realty, L.P., and Gateway 1 Newark LLC (collectively "the Landlords").

Landlords' right to renew them at the time the Debtors reject the Landlords' leases.