**In re UAL CORPORATION,
et al., Debtors.**

**No. 02 B 48191.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 27, 2003.

James H.M. Sprayrege, Marc Kieselstein, David Seligman, Steven R. Kotarba, Kirkland & Ellis, Chicago, IL, for Debtors.

Elizabeth M. Guffy, Dewey Ballantine LLP, Houston, TX, for Intrarock I, LLC.

Donald A. Workman, Foley & Lardner, Washington, D.C., for Consortium of Airports.

Charles P. Schulman, Sachnoff & Weaver, Ltd., Chicago, IL; Rockard J. Delgadillo, Eduardo Angeles, John M. Werlich, Los Angeles, CA, for City of Los Angeles Department of Airports.

Ben T. Caughey, Ice Miller, Indianapolis, IN, for Indianapolis Airport Authority.

Gregg Szilagyi, Christopher L. Rexroat, Alex Pirogovsky, Ungaretti & Harris, Chicago, IL; Douglas W. Jessop, Donald D. Allen, Jessop & Co., P.C., Denver, CO, for City and County of San Francisco and for Denver International Airport.

Michael Weininger, Katz, Randall, Weinberg & Richmond, Chicago, IL, for Centerpoint Properties Trust.

Morton R. Branzburg, Andrew O. Schiff, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Philadelphia, PA, for City of Philadelphia.

David M. Neff, Colleen E. McManus, Piper Rudnick, Chicago, IL; Joel L. Dahnke, Henry, Henry, O'Donnell & Dahnke, P.C., Fairfax, VA, for Winkler–Southern Towers, LP.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Chief Judge.

These administratively consolidated Chapter 11 cases have come before the court on a motion brought by the debtors and on several motions brought by lessors of nonresidential real property to the debtors. For all of the motions, the dispositive issue involves the application of § 365(d)(3) of the Bankruptcy Code (Title 11, U.S.C.). The debtors' motion is to extend the 60–day period allowed under § 365(d)(4) of the Code for assumption or rejection of nonresidential leases. It is opposed by a number of lessors, mostly operators of airports, on the ground that the debtors have not paid rent for the "stub period"—the period from the bankruptcy filing date to the end of the first month of bankruptcy administration—rent that the lessors contend they are entitled to be paid under § 365(d)(3). The other motions, brought by several additional lessors, set out demands for payment of stub period rent under § 365(d)(3). Because, as discussed below, § 365(d)(3) does not require the

payment of stub period rent, the lessors' objections to the debtors' motion will be overruled and the lessors' motions will be denied, in each situation without prejudice to a request for the allowance of an administrative expense under § 503(b) of the Code.

## Jurisdiction

Federal district courts have exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), district courts may refer bankruptcy cases to the bankruptcy judges for their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such a reference of the UAL cases. When presiding over a referred case, a bankruptcy judge has jurisdiction, under 28 U.S.C. § 157(b)(1), to enter appropriate orders and judgments in core proceedings within the case. The pending motions are core proceedings under 28 U.S.C. § 157(b)(2)(A)(matters concerning estate administration), (B)(claims against the estate), and (M)(orders approving the use or lease of property). This court therefore has jurisdiction to enter a final ruling on these motions.

## Findings of Fact

The few facts relevant to the pending motions are not in dispute. On December 9, 2002, UAL and twenty-seven of its related corporations filed the voluntary Chapter 11 cases now before the court. In the course of operating a large airline, the debtors lease nonresidential real property in airports and other locations. Many of these leases require rent to be paid, in advance, on the first day of each month.

Prior to their bankruptcy filings, the debtors failed to make many of the advance monthly rental payments due on December 1, and have not made payment of any December rent since the bankruptcy filing. The debtors have made (or acknowledge their obligation to pay) monthly rent commencing January 1, 2003.

On January 23, 2003, the debtors filed a motion to extend for 6 months the 60–day period for assumption or rejection of their nonresidential real property leases, which otherwise would have expired on February 7. Several lessors objected to the extension.[1] On February 6, the court entered an order granting the motion, subject to the pending objections, which were scheduled for further hearing. The motion has now been fully briefed and argued.

While the debtors' motion for extension of time to assume or reject was pending, several lessors of nonresidential real property to the debtor filed motions to compel payment of rent.[2] These motions are also fully briefed and argued.

## Conclusions of Law

■ For all of the motions now pending before the court, the outcome depends on whether a debtor in possession is required by § 365(d)(3) of the Bankruptcy Code to pay "stub period" rent. The term "stub period" refers to the time remaining after the entry of an order for bankruptcy relief, in a period for which rent was payable prior to the entry of the order for relief. The leases involved here required the advance payment of rent on December 1, 2002 to cover use and occupancy for the month of December, and the order for relief in these bankruptcy cases was en-

---

**1.** The lessors objecting to the debtors' motion include Intrarock I, LLC; a consortium of several airports; the cities of San Francisco and Los Angeles; and Denver International Airport.

**2.** The lessors with motions seeking immediate payment of the stub period rent include the Indianapolis Airport Authority, Centerpoint Properties Trust, the City of Philadelphia, and Winkler–Southern Towers, LP.

tered on December 9, the date of the voluntary bankruptcy filings. (Under § 301 of the Code, the filing of a voluntary bankruptcy case "constitutes an order for relief.") Thus, the stub period here is December 9 through December 31.

Whether § 365(d)(3) requires the UAL corporations to pay rent for this period is dispositive of the pending motions, since the assertion that § 365(d)(3) imposes such a requirement is the only ground asserted in opposition to the UAL corporations' motion to extend the time for assumption or rejection of nonresidential real estate leases under § 365(d)(4) and is the basis for the lessors' motions to compel payment of rent.

Section 365(d)(3) provides, in relevant part, as follows:

The trustee [or, as here, a debtor in possession with the powers and duties of a trustee, pursuant to § 1107(a) ] shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

By its terms, § 365(d)(3) creates a special period in the course of a bankruptcy case—the period from the date that an order for relief is entered to the date that an unexpired lease of nonresidential real property is assumed or rejected. This period can be referred to as the "option phase" of the bankruptcy case—the period during which the debtor in possession or trustee, under the protection of the Bankruptcy Code, is allowed to decide whether or not a lease should be assumed.[3]

The substantive impact of § 365(d)(3) is twofold. First, § 365(d)(3) defines *what* lease obligations must be performed by a trustee or debtor in possession—the obligations that "arise" during the option phase. Second, it sets out *when* that performance must take place—requiring that the trustee perform the obligations "timely."

This apparently straightforward directive has produced substantial conflict among the reported decisions—dealing with situations in which the time to make a payment under a lease and the time to which the payment obligation relates are not both within the option phase. Almost all of the cases frame the conflict as presenting a choice between "payment date" and "proration".

The payment date cases set forth a simple rule for application of § 365(d)(3): a lease obligation must be paid, in full, if and only if it becomes payable during the option phase, regardless of the lease period

**3.** In many of the decisions dealing with § 365(d)(3), the option phase is referred to as the "post-petition, pre-rejection period." *See, e.g., In re CCI Wireless, LLC,* 279 B.R. 590, 593 (Bankr.D.Colo.2002). This terminology is inaccurate in two respects. First, the commencement of the option phase is not the filing date of the petition, but the entry of the order for relief, which, in an involuntary or converted bankruptcy case, will be after the petition date. *See* 11 U.S.C. §§ 303(h)(entry of the order for relief in involuntary cases); 348(c)(entry of the order for relief in converted cases); *In re Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125, 1126 (7th Cir.1998) ("[T]he dividing line [for § 365(d)(3)] is ... not the date on which the petition is filed but the date on which the order for relief is entered."). Second, at the time the issue arises, the debtor may not have decided whether to assume or reject the lease in question, so referring to a "pre-rejection" period may also be incorrect. (However, if the debtor ultimately assumes the lease in question, disputes regarding the debtor's obligation to make payments under the lease are mooted, since § 365(b)(1) requires the cure of all defaults in connection with any lease assumption.)

to which the obligation relates. Thus, if a lease imposes the obligation to pay rent or real estate taxes during the option phase, the payment date decisions require that the entire bill be paid, even though the bill relates to periods of occupancy before or after the option phase. *See, e.g., In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d Cir.2001)(taxes billed during the option phase are fully payable, even though largely attributable to a period prior to the order for relief); *In re Comdisco, Inc.*, 272 B.R. 671 (Bankr.N.D.Ill. 2002)(rent due during the option phase is fully payable, even though largely attributable to a period after rejection of the lease).

Proration decisions, in contrast, hold that a payment obligation due during the option phase must be paid under § 365(d)(3) according to how much of the time period related to the payment is within the option phase. *See, e.g., In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir.1998)(property taxes due under a lease during the option phase are only required to be paid under § 365(d)(3) to the extent that the taxes were attributable to periods of time within the option phase, not to any time periods prior to the entry of the order for relief); *Newman v. McCrory Corp. (In re McCrory)*, 210 B.R. 934 (S.D.N.Y.1997)(taxes due during the option phase are not payable to the extent attributable to the period after rejection of the lease).

The root conflict between the payment date and proration approaches is a disagreement over when an obligation arises under a lease (since § 365(d)(3) only requires performance of obligations that arise during the option phase). The payment date cases say that there is a plain meaning to this concept in the context of payment obligations—the entire obligation arises when the payment is due. The

proration cases hold that the obligation arises on a daily basis during the period that generates the right to payment. *Handy Andy* explains the debate:

> The quarrel between the parties is over whether [the debtor's] "obligation" under the lease could arise before [it] was contractually obligated to reimburse [its lessor] for the taxes that the latter had paid. [The lessor] says no, and this "billing date" approach is a possible reading of section 365(d)(3), but it is neither inevitable nor sensible. It is true that [the debtor's] obligation ... to pay ... real estate taxes did not crystallize until the rental due date after the taxes were paid. But ... that obligation could realistically be said to have arisen piecemeal every day [during the tax year] and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force.... The obligation thus arose, in a perfectly good sense, before the bankruptcy.

144 F.3d at 1127.

Like most decisions involving the debate between payment date and proration, *Handy Andy* dealt with a payment obligation that became due during the option phase. In this situation, there is no question that § 365(d)(3) requires the trustee to make a payment under the lease. Rather, the question is how much that payment should be—or, in other words, *what* obligation must be performed. The payment date approach requires the full payment obligation to be satisfied, whereas the proration approach makes only a part of the amount due an obligation subject to § 365(d)(3).

The pending motions present a different situation, one in which the payment obligation, though related in part to a period within the option phase, became due before the option phase began. This situa-

tion implicates the second aspect of § 365(d)(3)—*when* an obligation must be satisfied. At least two published decisions hold that proration is required in this context. *See In re Travel 2000, Inc.*, 264 B.R. 444 (Bankr.W.D.Mich.2001); *In re Victory Markets, Inc.*, 196 B.R. 6 (Bankr.N.D.N.Y. 1996). However, the plain language of § 365(d)(3), its legislative history, and its context, all indicate that the requirement of "timely" performance cannot apply to a payment obligation that became due before the bankruptcy case was filed.

There appears to be no real question about the meaning of the legislative language: "timely" means "at the time required by the lease." *See, e.g., HA–LO Industries, Inc. v. Centerpoint Properties Trust (In re HA–LO Industries, Inc.)*, 2002 WL 31628221 at * 3 (N.D.Ill.2002) ("Section 365(d)(3) requires the debtor to 'timely perform [its] obligations' under a lease until the lease is rejected. The plain meaning of this language requires that the debtor fulfill its lease obligations on time and according to the lease's terms until the rejection takes effect.").

The legislative history is also clear on this point. Section 365(d)(3) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 (1984), and the only explanation of its operation is in a floor statement of Senator Hatch. *See In re Cukierman*, 265 F.3d 846, 851 n. 2 (9th Cir.2001) (describing the extent of the legislative history). After describing the difficulty landlords faced when a bankruptcy trustee ceased paying rent pending a decision to assume or reject the lease, Senator Hatch stated that § 365(d)(3) would "lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease· of nonresidential real property *at the time required in the lease"* (emphasis added). 130 Cong.Rec. S8895

(daily ed. June 29, 1884) (statement of Sen. Hatch), reprinted in App. E Collier on Bankruptcy, at App. Pt. 6–173 (Lawrence P. King et al. eds., 15th ed. rev.2001).

As a final indication that "timely" performance under § 365(d)(3) requires payment at the time required by the lease, there is simply no basis for establishing any other time of payment. Section 365(d)(3) is designed to operate without judicial intervention; it expressly directs the trustee or debtor in possession to perform lease obligations notwithstanding the provisions of § 503(b)(1), which allows payment of administrative expenses only after notice and hearing. *See In re Telesphere Communications, Inc.*, 148 B.R. 525, 530 (Bankr.N.D.Ill.1992)(holding that § 365(d)(3) requires payment to be made in the ordinary course of operating the debtor's business). Yet, without a court order directing payment by a particular date, there would be no method by which a trustee or debtor in possession could know when to pay obligations that were due under the lease before the case was filed. In the present case, for example, there would be no way to determine whether "timely" payment of the December stub period rent required payment at the end of the month, or at some regular intervals during the month, or immediately upon the filing of the bankruptcy case. Although it is possible for a trustee to make a timely, prorated payment of a sum coming due within the optional phase of a bankruptcy case—as *Handy Andy* requires for tax liabilities that relate to periods prior to the operational phase—it is not possible for a trustee to make a timely payment of a lease obligation that was past due at the time the bankruptcy case was filed.

Accordingly, then, in light of the timely payment requirement, and without reference to the question of when the obligation arose, § 365(d)(3) does not require pay-

ment of the stub period rent in question here. This result is in accord with the majority of cases applying § 365(d)(3) in this context, which employ the payment date approach. *See In re HQ Global Holdings, Inc.*, 282 B.R. 169 (Bankr.D.Del. 2002); *In re CCI Wireless, LLC*, 279 B.R. 590 (Bankr.D.Colo.2002); *The 1/2 off Card Shop, Inc.*, 2001 WL 1822419 (Bankr. E.D.Mich.2001); *In re Appletree Markets, Inc.*, 139 B.R. 417 (Bankr.S.D.Tex.1992).

■ That payment of stub period rent is not required under § 365(d)(3) does not mean, however, that stub period rent must be treated as a prepetition claim, as some of the "payment date" cases cited above suggest. *See 1/2 off Card Shop*, 2001 WL 1822419 at *3 (where rent was due on the first day of the month and the bankruptcy filed on the second day, a prepetition default occurred which "does not encompass an administrative claim"). To the contrary, it is well-recognized that prior to the enactment of § 365(d)(3), the accepted practice was to allow an administrative claim under § 503 for rent relating to any period in which rental property was occupied by the debtor, regardless of when the rent was payable. *See Newman v. McCrory Corp. (In re McCrory)*, 210 B.R. 934, 936 (S.D.N.Y.1997)(citing authority for the proposition that, under § 503(b)(1) "courts ordinarily allowed as an administrative expense the full amount of the rent at the contract rate, so long as it was not clearly unreasonable, but prorated that rent over the postpetition, prerejection period.") Nothing in § 365(d)(3) requires any change in this practice. By directing a trustee to make timely payment of rental claims that are due during the option phase, § 365(d)(3) serves to satisfy claims that might otherwise have been asserted under § 503, but where § 365(d)(3) does not require trustee payment, administrative claim status under § 503 would still be available to the extent that the use of rental property benefited the estate. *See In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173–74 (Bankr.D.Del.2002)(agreeing with the parties that a landlord is entitled to an administrative claim for the stub period rent). Accordingly, the decision on the pending motions is without prejudice to the assertion by the lessors of an administrative claim for stub period rent.

### Conclusion

For the reasons set forth above, (1) the objections to the debtors' motion for extension of time to assume or reject their unexpired leases of nonresidential real estate are overruled, and the order previously entered by the court will be binding on all lessors of such property, and (2) the lessors' motions for immediate payment of stub period rent are denied, without prejudice to assertion of a claim for administrative expense pursuant to § 503 of the Bankruptcy Code. A separate order will be entered to this effect.