In re NATIONAL REFRACTORIES
& MINERALS CORP., Debtor.

No. 01–445482 T.

United States Bankruptcy Court,
N.D. California.

Aug. 27, 2003.

Terrance L. Stinnett, Stennett, Meyers & Davis, San Francisco, CA, for Debtor.

Jeffrey Allen, Graves & Allen, Oakland, CA, for CenterPoint Properties.

### MEMORANDUM OF DECISION RE ADMINISTRATIVE LEASE CLAIM

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

CenterPoint Properties Trust ("Centerpoint"), a former landlord of the above-captioned debtor (the "Debtor"), requests allowance and payment of $237,818.44 as an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1). The Debtor, the Official Creditors Committee (the "Committee"), and Congress Financial Corporation (Western) ("Congress"), the Debtor's secured creditor, (collectively the "Objecting Parties") oppose the request. The Court's conclusions and reasoning are set forth below.

### SUMMARY OF FACTS

The following facts are not in dispute:

In 1995, the Debtor leased a manufacturing facility in Illinois (the "Leased Premises") from Centerpoint's predecessor in interest. The lease was amended in 2000 to extend the term through 2004 and to make certain other changes. (The lease, as amended, is referred to hereinafter as the "Lease".) On October 10, 2001, the Debtor filed a chapter 11 petition. The Debtor obtained Court approval of an extension of time to assume or reject the Lease until a reorganization plan was confirmed and continued to occupy the Leased

Premises for approximately six months after filing for bankruptcy.

On April 3, 2002, the Debtor sent Centerpoint a letter advising Centerpoint that it had vacated the Leased Premises as of April 2, 2002 and intended to reject the Lease. The Court approved the rejection of the Lease on May 9, 2002, retroactively back to April 3, 2002. Centerpoint did not object to the retroactive Lease rejection.

Approximately one year after recovering possession of the Leased Premises, Centerpoint filed a request for payment of an administrative expense claim and a motion for approval of the request (the "Motion"). In the Motion, Centerpoint asserts the right to an administrative expense claim (the "Claim") in the total amount of $237,818.44, consisting of $180,248 in costs to repair and clean up the Leased Premises (the "Repair Costs"), $54,391.16 for post-petition rent, and $3,179.28 for post-petition, pre-rejection taxes and operating expenses.

### DISCUSSION

■ The Debtor concedes that, if it owes Centerpoint post-petition, pre-rejection taxes, Centerpoint is entitled to an administrative claim for the amount due. However, it contends that Centerpoint has submitted insufficient evidence to support its claim. The Debtor does not address Centerpoint's claim for post-petition, pre-rejection operating expenses or base rent. Clearly, Centerpoint is entitled to an administrative claim for post-petition, pre-rejection operating expenses and base rent as well as taxes. These three categories of

Centerpoint's claim will be allowed according to agreement of the parties or proof as to the amounts due. However, no payment will be ordered at this time since it appears that the estate is administratively insolvent. *See In re Orvco, Inc.,* 95 B.R. 724, 728 (9th Cir. BAP 1989) (post-petition, pre-rejection rent claim not entitled to superpriority in chapter 11 case that was administratively insolvent); *see also In re LPM Corp.,* 300 F.3d 1134, 1137–38 (9th Cir.2002) (post-petition, pre-rejection rent claim that arose in chapter 11 case that was converted to chapter 7 not entitled to superpriority over chapter 7 claims).

Congress also objects to the use of its cash collateral to pay the Claim. Finally, the Debtor objects to any payment being ordered until Centerpoint establishes that it has returned or given credit for the Debtor's $11,616 security deposit. Since the Court has concluded that no payment will be ordered at this time, this objection will be deferred until such time as it appears to have practical relevance.

The remainder of Centerpoint's request is based on the allegation that the Debtor breached the Lease post-petition, pre-rejection: (1) by failing to maintain and return the Leased Premises to Centerpoint in good condition, normal wear and tear excepted, and (2) by leaving personal property on the Leased Premises, including hazardous materials.[1] Centerpoint requests an administrative claim for its expenses repairing the Leased Premises, removing the abandoned personal property, including hazardous waste, and cleaning up the Leased Premises (the "Repair Costs"). Centerpoint also seeks rent for an addi-

---

**1.** Article VII, Section 8.1, of the Lease requires the Debtor to maintain the Leased Premises in "good order, condition and repair" and to make, at the Debtor's expense, all ordinary and extraordinary repairs required to the structure, fixtures and appurtenances used in connection with the Leased Premises. Article XXV, Section 25.1, requires the Debtor, upon termination of its occupancy of the Leased Premises, to deliver the Leased Premises to Centerpoint "broom clean, in good order, condition and repair, reasonable wear and tear excepted."

tional 60 days (the "Holdover Rent") on the theory that the Debtor's failure to return the Leased Premises in good condition delayed its ability to re-lease the Leased Premises by at least 60 days. Therefore, according to Centerpoint, the Debtor should be treated as a holdover tenant.

 Section 503(b)(1)(A) of the Bankruptcy Code provides that, after notice and hearing, the Court shall allow as an administrative expense "the actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b). To qualify as an administrative expense, a debt must: (1) arise from a transaction with the debtor-in-possession and (2) directly and substantially benefit the estate. *See In re Abercrombie*, 139 F.3d 755, 757 (9th Cir. 1998); *In re DAK Industries, Inc.*, 66 F.3d 1091, 1094 (9th Cir.1995). The terms "actual" and "necessary" are construed narrowly "to keep fees and administrative costs at a minimum." *In re Dant & Russell, Inc.*, 853 F.2d 700, 705 (9th Cir.1988). The burden of proving an administrative expense claim is on the claimant. *DAK Industries*, 66 F.3d at 1094.

A trustee or chapter 11 debtor-in-possession is required to assume or reject an unexpired lease of nonresidential real property within 60 days for the petition date unless that deadline is extended by the Court. 11 U.S.C. § 365(d)(4). If the lease is rejected before it is assumed, the rejection constitutes a breach of the lease that is deemed to have occurred pre-petition. Thus, any damage claim for breach of a rejected lease is a general, unsecured claim. 11 U.S.C. § 365(g)(1).

 However, with exceptions not relevant to this dispute, 11 U.S.C. § 365(d)(3) requires a trustee to timely perform all of the debtor's obligations under an unexpired lease pending the decision to assume or reject. Section 365(d)(3) expressly states that the trustee must timely perform any such obligation regardless of whether it qualifies as an administrative expense under section 503(b)(1). 11 U.S.C. § 365(d)(3). Thus, if the trustee or debtor-in-possession fails to timely perform any lease obligations that accrue during the post-petition, pre-rejection period, the lessor is entitled to an administrative claim for damages regardless of whether the use of the leased property during this period benefitted the estate. *In re Pacific–Atlantic Trading Co.*, 27 F.3d 401, 403–405 (9th Cir.1994).[2]

The parties recognize that whether Centerpoint is entitled to an administrative claim for the Repair Costs and the Holdover Rent may depend on when the events occurred giving rise to Centerpoint's claim. In other words, when was the damage done to the Leased Premises?[3] When did the Debtor first bring on to the Leased Premises the hazardous materials and other items of personal property not removed when the Debtor vacated the Leased Premises? The parties have not yet done any discovery and, given the Debtor's limited resources, have asked the Court address the legal issues under both scenarios before they do so.

Centerpoint contends that it is entitled to an administrative claim regardless of when these events occurred. It reasons that, even if these events occurred pre-

---

2. The Objecting Parties do not appear to contend that the use of the Leased Premises during the post-petition, pre-rejection period did not benefit the estate.

3. Centerpoint has provided some evidence that most of the damage to the Leased Premises occurred post-petition, when the Debtor moved out. However, the Court agrees with the Objecting Parties that the evidence is insufficient.

petition, every day that the Debtor occupied the Leased Premises post-petition, it had a contractual obligation to maintain the Leased Premises in good condition. Therefore, it violated the Lease post-petition each day it failed to repair the damages. In any event, Centerpoint contends, the Debtor's obligation to return the Leased Premises in good repair accrued post-petition when the Debtor moved out.

■ In support of their contention that Centerpoint is not entitled to an administrative claim for the Repair Costs and the Holdover Rent, the Objecting Parties rely primarily *In re Dant & Russell, Inc.*, 853 F.2d 700, 705 (9th Cir.1988). In *Dant & Russell*, the debtor had operated a wood treatment plan on the leased property for approximately 10 years before it filed a chapter 11 petition. About four months after filing for bankruptcy, the debtor entered into a new lease with the lessor on virtually identical terms.

The debtor ceased its operations approximately one year after filing for bankruptcy. The lessor asserted an administrative expense claim for environmental damage to the leased property caused by the debtor's operations. As in this case, the lessor relied on language in the lease requiring the debtor "to restore the premises to a condition satisfactory to the lessor before abandoning the premises." *Dant & Russell*, 853 F.2d at 702.

The *Dant & Russell* court rejected the lessor's claim for administrative priority in its entirety. It stated that any administrative expense claim under section 503(b)(1)(A) "must have a distinct postpetition character." 853 F.2d at 706. Moreover, it concluded that any damage that occurred post-petition became a pre-petition claim when the lease was rejected pursuant to 11 U.S.C. § 365(g). 853 F.2d at 708.

The problem with *Dant & Russell* is that, although it was decided after the enactment of 11 U.S.C. § 365(d)(3), the bankruptcy case was filed before the effective date of that provision. *See Pacific-Atlantic Trading*, 27 F.3d at 403. Otherwise, *Dant & Russell* would control, and Centerpoint's claim for the Repair Costs and the Holdover Rent would fail without regard to when the critical events occurred. However, 11 U.S.C. § 365(d)(3), which excuses a post-petition, pre-rejection claim from compliance with 11 U.S.C. § 503(b)(1), compels a different result, as discussed below.

■ The Court excepts from this factual distinction Centerpoint's claim for the Holdover Rent. The Court concludes that this claim must fail regardless of when the damage to the Leased Premises occurred. In reaching this conclusion, the Court finds instructive *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr.E.D.Va.2002). In *Trak Auto*, the debtor did not vacate the premises by the rejection date. When the debtor did move out, it owed rent for both the pre-rejection and post-rejection period, the latter as a holdover tenant. The lessor sought an administrative claim for both types of rent at the rate specified in the lease. 277 B.R. at 664. The *Trak Auto* court concluded that, while the lessor was entitled to an administrative claim for the pre-rejection rent at the rate specified in the lease, based on 11 U.S.C. § 365(d)(3), its claim for holdover rent had to qualify as an administrative claim under 11 U.S.C. § 503(b)(1). Thus, the lessor was only entitled to rent for the latter period to the extent the use of the leased premises directly benefitted the estate. 277 B.R. at 666–67.

The Court agrees with the analysis set forth in *Trak Auto* and finds it applicable to Centerpoint's claim for the Holdover Rent. The Court concludes that Center-

point's claim for the Holdover Rent must fail because the Debtor did not actually occupy the Leased Premises during the 60 days in question. Therefore, there was no direct benefit provided to the estate during the fictional holdover period.

With respect to the Repair Costs, the Court concludes that, if the damage to the Leased Premises did occur post-petition, pre-rejection and/or if the Debtor first brought the abandoned items, including the hazardous materials, onto the Leased Premises post-petition, pre-rejection, the Debtor's failure to repair the damage and to remove the items of personal property would violate of 11 U.S.C. § 365(d)(3). Thus, Centerpoint would be entitled to an administrative claim for the Repair Costs. Given the authorities discussed above, the Court does not see how 11 U.S.C. § 365(d)(3) can be read to exclude such a claim.

■ A more difficult issue is presented by Centerpoint's claim to administrative priority even if the events giving rise to the Repair Costs occurred pre-petition. There does not appear to be any controlling Ninth Circuit law on point. Additionally, the parties cited and the Court has been unable to locate any authority precisely on point from another circuit.

The Court has located a line of cases addressing a somewhat analogous issue: i.e., whether a nonresidential real property lessor may include in its administrative claim rent or taxes that accrued pre-petition where payment first became due post-petition. Two schools of thought have emerged: i.e., the proration theory; *see In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir.1998); and the performance date theory; *see In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3rd Cir.2001). The proration theory holds a slight majority. *See In re Furr's Supermarkets, Inc.*, 283 B.R. 60, 68 (10th Cir. BAP 2002) (adopting proration rule).[4]

The *Handy Andy* court concluded that the portion of the taxes that accrued pre-petition could not be included in the administrative claim. 144 F.3d at 1127. The *Montgomery Ward* court concluded that the obligation accrued in its entirety when it was billed. 268 F.3d at 209. *See also In re Koenig Sporting Goods, Inc.*, 203 F.3d 986, 988–990 (6th Cir.2000) (administrative claim for rent should be based on billing date without proration); *but see Vause v. Capital Poly Bag, Inc.*, 886 F.2d 794, 798–803 (6th Cir.1989) (rejecting billing date approach to administrative claim for farm rent based on legislative history and equities of case).

The Court follows the majority and adopts the proration or accrual approach. In other words, whether Centerpoint is entitled to an administrative claim for the Repair Costs depends on when the damage occurred. As stated in *Handy Andy*,

---

4. The Sixth Circuit has issued inconsistent rulings on this issue: *compare In re Koenig Sporting Goods, Inc.*, 203 F.3d 986, 989 (6th Cir.2000) *with Vause v. Capital Poly Bag, Inc.*, 886 F.2d 794 (6th Cir.1989). Although the *Furr's* court listed *In re Cukierman*, 265 F.3d 846 (9th Cir.2001) as having adopted the performance rule, the Court does not read *Cukierman* in this manner. The *Cukierman* court held that the lessor was entitled to an administrative claim for amounts designated as rent but which were actually payments that ac-

crued during this period on a promissory note. Thus, the question presented in *Cukierman* was not whether a claim could qualify as an administrative claim under 11 U.S.C. § 365(d)(3) even though it accrued pre-petition. The question was whether the claim had to relate to the use of the nonresidential real property. The *Cukierman* court held that it did not, as long as the amount in question was designated as rent under the lease. 265 F.3d at 849–852.

"[t]his interpretation is more sensible than... [the converse] because it tracks the purpose of giving postpetition creditors a high priority in the distribution of the debtor's estate." 144 F.3d at 1127. Following the reasoning of the *Handy Andy* court, once the damage to the Leased Premises was done, the Debtor's obligation to repair it became fixed. If the Lease had been terminated just prior to the filing of the bankruptcy petition, the Debtor's liability for the Repair Costs would have been no different than those asserted in the Motion. Thus, to treat them as administrative claims would be contrary to the "real-world situation to which the language [of 11 U.S.C. § 365(d)(3)] pertains." *Handy Andy*, 144 F.3d at 1128.

## CONCLUSION

Centerpoint is entitled to an administrative claim for post-petition, pre-rejection taxes, operating expenses, and rent during the period the Debtor actually occupied the Leased Premises. Additionally, Centerpoint is entitled to an administrative claim for the Repair Costs if it can establish that the damage to the Leased Premises occurred post-petition, pre-rejection and/or that the abandoned items of personal property, including hazardous materials, were first brought onto the Leased Premises post-petition, pre-rejection. However, Centerpoint is not entitled to an administrative claim for the Repair Costs if it is unable to prove that these events took place post-petition, pre-rejection. Moreover, Centerpoint is not entitled to an administrative claim for the Holdover Rent in any event.

Counsel for the Debtor is directed to submit a proposed form of order in accordance with this decision. The parties are directed to meet and confer to determine whether a status conference should be scheduled at this time and, if so, to sched-

ule one, or whether further proceedings on this contested matter should be deferred until the ability of the estate to pay administrative claims is clearer.