## In re DESIGNER DOORS, INC., Debtor.

### No. 2:07–BK–03226–RJH.

United States Bankruptcy Court, D. Arizona.

June 17, 2008.

Jeffrey A. Sandell, Esq., Tiffany & Bosco, P.A., for Debtor.

RANDOLPH J. HAINES, Bankruptcy Judge.

This case raises the question of when an "obligation" to indemnify under a nonresidential lease "arises" for purposes of 11 U.S.C. § 365(d)(3).

## I. Facts

The material facts are undisputed. Designer Doors, Inc. ("the Debtor") leased a property from Lester C. and Jimmy L. Smull Family Trust ("the Landlord"). The Debtor agreed in the lease to keep the property free of any liens [1] arising from "work performed, material furnished, or obligation incurred" by the Debtor on the property. The Debtor also agreed to indemnify[2] the Landlord in case any liens were recorded in connection with the Debtor's use of the property.

The Debtor subsequently contracted with Palo Verde Dry Wall, Inc. ("Palo Verde") to make some improvements to the property. The Debtor failed to pay Palo Verde for the work Palo Verde performed on the property. The Debtor then filed this chapter 11 case on July 9, 2007.

■ Five days after the Debtor filed its petition, Palo Verde recorded a mechanic's lien against the property.[3] About three months later, but before the Debtor rejected the lease, Palo Verde filed suit against the Landlord seeking to foreclose on the mechanic's lien, seeking payment of $12,800 plus attorneys' fees. The Landlord spent $3,992 in attorneys' fees defending that suit before the lease was rejected by order of this Court effective as of December 14, 2007.

The Landlord has filed an administrative expense claim seeking to have the Debtor pay for a bond to clear Palo Verde's recorded lien, to pay for the attorney's fees incurred to defend against the foreclosure suit, and for $15,640 in unpaid postpetition rent. Debtor has responded that the rent will be treated as an administrative claim and paid under the Debtor's plan, but that the obligations to indemnify against the lien and pay for a bond and attorneys' fees all arose prepetition and therefore should be treated as general unsecured claims.

## II. Analysis of Law

■ Debtor had two or three separate obligations under this lease that are pertinent to the factual and legal context here: (1) a duty to keep the property free of liens; and (2) a duty to indemnify the Landlord if (a) the Landlord suffered any

1. Paragraph 17 of the Lease provides in pertinent part: "Tenant *shall keep the Premises* and the Commercial Center free of any liens or claims of lien arising from any work performed, material furnished, or obligations incurred by Tenant in connection with the Premises. If Tenant disputes the correctness or validity of any claim of lien, Tenant shall within ten (10) days after written request by Landlord record such bond as will release said property from the lien claimed. If a final judgment establishing the validity or existence of a lien for any amount is entered, Tenant shall pay and satisfy the same at once...."

2. Paragraph 14 of the Lease provides in pertinent part: "Tenant shall indemnify and save Landlord harmless from and against any and all liens, claims, demands, actions, causes of action, obligations, penalties, charges, liability, damages, loss, cost or expense, including reasonable attorney's fees for the defense thereof, arising from or connected with the conduct or management of the business conducted by Tenant on or about the Premises, or the use of occupancy of Tenant's Premises, or from any breach or default on the part of Tenant in the performance of any covenants or agreement on the part of Tenant to be performed pursuant to the terms of this Lease ...."

3. Under Arizona law, a contractor must perfect the statutory mechanics' and materialmen's lien by recording a notice and claim of lien in the county recorder's office within 120 days of the completion of the construction. A.R.S. § 33–993. Because such a mechanics' and materialmen's lien has priority over all encumbrances that arise after commencement of work on the property (*i.e.*, a retroactive priority), A.R.S. § 33–992(A), such a postpetition perfection, if done timely, is excepted from the automatic stay pursuant to §§ 362(b)(3) & 546(b).

loss on account of a lien or (b) the Landlord incurred attorneys' fees defending against a lien. These indemnity obligations included both the costs of defense and the ultimate liability.

Bankruptcy Code[4] § 365(d)(3) provides that "the trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected ...." This language complicates questions such as the one presented here simply because the Bankruptcy Code does not define the term "obligation," quite unlike its rather careful definition of "claim." "The term 'obligation' is not defined in the Code, and it is thus apparently used in its commonly understood sense."[5] Black's Dictionary defines obligation as "anything that a person is bound to do or forbear from doing, whether the duty is imposed by law, contract, promise, social relations, courtesy, kindness, or morality." BLACK'S LAW DICTIONARY 1104 (8th ed.2004). Here the Debtor's duties to the Landlord would certainly be classified as obligations under any conceivable definition because they were duties under a valid contract.

The more difficult question here is when do these obligation arise. Section 365(d)(3) applies only to those obligations that arise between the time the petition is filed and the lease is assumed or rejected.

## A. Duty to Keep the Property Free of Liens

 Unlike most consensual liens, a mechanics' and materialmen's lien arises long before it is recorded. The lien arises from statute[6] and from the labor that is performed or the materials supplied. Here, because Palo Verde performed its labor and supplied its materials prepetition, the lien arose prepetition, even though not perfected until postpetition.[7] Therefore technically the debtor breached its obligation to keep the property free of liens pre-petition. This obligation, and the debtor's liability to the Landlord for breaching this obligation, certainly continued postpetition, but cannot be said to have arisen only postpetition. It is not unlike prepetition rent that remains in default postpetition—the obligation did not arise postpetition and therefore is not within the scope of § 365(d)(3).

The situation is also analogous to claims arising from debtor/tenant's damage to the leased property. In *National Refractories*,[8] the question was whether an administrative expense arose under § 365(d)(3) for the cost of repairing damage done to the property prepetition. The lease re-

---

**4.** Except as otherwise indicated, all references to the Bankruptcy Code are to 11 U.S.C. §§ 101 *et seq.*

**5.** *CenterPoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir.2001). A number of other courts have likewise taken a plain-meaning reading of "obligation." *See, e.g., Newman v. McCrory Corp. (In re McCrory Corp.)*, 210 B.R. 934, 940 (D.N.Y.1997); *In re R.H. Macy & Co.*, No. 93–4414, 1994 WL 482948 (S.D.N.Y. Feb.23, 1994). *But see Child World v. Campbell/Massachusetts Trust (In re Child World)*, 161 B.R. 571, 574 (D.N.Y. 1993).

**6.** A.R.S. § 33–983 provides: "A person who furnishes professional services or material or labors upon a lot in an incorporated city or town, or any parcel of land not exceeding one hundred sixty acres in the aggregate ... shall have a lien on the lot or parcel of contiguous land ... for professional services or material furnished and labor performed."

**7.** *See* note 3, *supra.*

**8.** *In re National Refractories & Minerals Corp.*, 297 B.R. 614, 620 (Bankr.N.D.Cal.2003).

quired the debtor to maintain the property clean and in good repair. The court determined that "if the Debtor first brought the abandoned items, including the hazardous materials, onto the Leased Premises post-petition, pre-rejection, the Debtor's failure to repair the damage and to remove the items of personal property would violate 11 U.S.C. § 365(d)(3)."[9] But because the hazardous materials were located on the premises prepetition, "the Debtors' obligation to repair it became fixed" prepetition, and therefore was not subject to § 365(d)(3).[10] A similar analysis was adopted in *Ames Department Stores*,[11] only there the materials on the premises did not violate the lease until they were required to be removed upon termination, and because that was postrejection it also fell outside the scope of § 365(d)(3).

■ The repair/removal obligation in *National Refractories* is analogous to this debtor's agreement to keep the property free of liens. Where the debtor's breach of its obligation first arises prepetition, it is not an obligation that arises "from and after the order for relief" so the Landlord is not entitled to administrative expense under § 365(d)(3).

### B. Duty to Indemnify

The Debtor's obligation to indemnify may not be as simple to analyze. First, however, it is useful to recognize that there are at least three different kinds of liabilities whose timing may be at issue in various contexts. The first is when does a *cause of action* arise under state law, the timing of which is important to ripeness, statutes of limitations and the analysis of compulsory counterclaims. The second is when does a *claim* arise under bankruptcy law, which is critical for determining whether it is a general prepetition claim or an administrative priority expense. The third is when does an *obligation* arise under a lease, which is the critical issue under § 365(d)(3).

■ Under state law, a cause of action for indemnification arises only when the indemnitee has suffered actual loss through a judgment or a payment.[12] Under the facts here, the Landlord's cause of action for indemnification did not arise simply because the Tenant had work done on the property and materials supplied to it, even though that gave rise to an inchoate mechanics' and materialmens' lien, because the Landlord had not yet suffered any loss. Indeed, it did not even accrue when the lien was perfected by recording, because that still did not constitute a judgment against or payment by the Landlord. But it certainly did arise postpetition when the Landlord spent attorneys' fees defending against the lien foreclosure.

■ The accrual of a cause of action under state law does not determine when a

---

9. *National Refractories,* 297 B.R. at 619.

10. *Id.* at 620. In arriving at that conclusion the Court stated it was adopting the "proration or accrual approach." *Id.* at 619. This Court believes the holding in *National Refractories* would be the same under either the accrual or the performance date approach, because it was prepetition that the Debtor first breached its obligation under the lease to maintain the premises "in good order, condition and repair." *See id.* at 616 n. 1. The result might have been different if the only obligation that was breached was a "re-

turn condition" obligation, which can only be breached upon termination of the lease.

11. *In re Ames Dep't Stores, Inc.,* 306 B.R. 43, 61 (Bankr.S.D.N.Y.2004).

12. *Levin v. Hindhaugh,* 167 Ariz. 110, 804 P.2d 839, 840 (App. Div. 2 1990)(dictum); *HSL Linda Gardens Properties, Ltd. v. Freeman,* 176 Ariz. 206, 859 P.2d 1339, 1340–41 (App. Div. 2 1993)(a cause of action on a promise to indemnify does not arise until there is damage).

claim arises under the Bankruptcy Code. This is because the Code defines "claim"[13] to include contingent and unmatured claims, which may not yet constitute a cause of action under state law. The failure to understand this important distinction between a claim and a cause of action is what gave rise to the famous misunderstanding in *Frenville*.[14] Because a "claim" can be contingent or unmatured whereas a cause of action for indemnification cannot, an indemnification claim can arise for bankruptcy purposes when the contract requiring indemnification is executed, long before the indemnitee incurs any expense or suffers any loss.

Debtor's principal argument here is that because an indemnification "claim" arose prepetition, the "obligation" cannot be governed by § 365(d)(3), which encompasses only obligations arising postpetition. For example, the Debtor relies on *ANC Rental*,[15] which dealt with an indemnification obligation under a lease, but the issue was whether it was an administrative expense claim, not whether it was governed by § 365(d)(3).[16]

The *ANC Rental* opinion, like the Debtor's arguments here, does not discriminate between the concepts of "obligation" and "claim." But the words are not synonymous under the Code. First, "claim" is a specifically defined term, but "obligation" is not. If the drafters of the 1984 amendment that added § 365(d)(3) had intended it to apply to all such claims, they would have used the already defined term. But this would have made virtually no sense, because almost all claims that may arise under a lease will arise as contingent or unmatured claims, when the lease was entered into, so § 365(d)(3) would have almost no application. Perhaps claims for damage or waste of the property arise only when the damage occurs and not when the lease was entered into, but certainly rent claims, which were undoubtedly the principal object of § 365(d)(3), would arise as claims when the lease was entered into. Indeed, that was precisely one of the reasons for the Code's broad and novel definition of "claim," to change the anomalous result under the Act that some rent claims may not be provable.

The issue here is not when a *claim* for indemnification arises, but when does the "obligation" arise.

**13.** The Code defines "claim": "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." § 101(5).

**14.** *In re M. Frenville Co.*, 744 F.2d 332 (3d Cir.1984). The Ninth Circuit BAP recognized that the *Frenville* analysis was mistaken when it held that "the right to payment or accrued state law claim test is no longer viable in the Ninth Circuit." *In re Hassanally*, 208 B.R. 46, 51 (9th Cir.BAP1997).

**15.** *In re ANC Rental Corp.*, 341 B.R. 178 (Bankr.D.Del.2006).

**16.** In that case the debtor, Alamo Rent-a-Car, entered into an agreement to indemnify the lessee. *Id.* at 179. The lessee got into an auto accident in which the occupants of the other vehicle were seriously injured. *Id.* The injured occupants sued the lessee and received a verdict of $2.5 million. *Id.* The lessee, in turn, sued Alamo for indemnification, but only after Alamo had filed bankruptcy. *Id.* The court held that Alamo's "obligation to indemnify ... arose when the contract arose." *Id.* at 181. The court concluded that because the contract arose prepetition, the obligation likewise arose prepetition, and the lessee was not entitled to her administrative expense claim. *Id. See also In re Mid–American Waste Sys.*, 228 B.R. 816 (Bankr.D.Del. 1999).

It also may be the case that an obligation for purposes of § 365(d)(3) may sometimes equate to a cause of action, and may sometimes not. Probably this will be largely governed by the terms of the lease, rather than by either the definition of "claim" under the Code or the accrual of a cause of action under state law.

■■■■ The issue has arisen most often with respect to tenants' obligations to pay rent and real property taxes. The courts that have analyzed these issues have generally split into two approaches: the "accrual" approach and the "billing date" approach.[17] At least with respect to property taxes, the accrual or "proration" approach looks to when the taxes accrued. Those that accrued prepetition are not regarded as being within the scope of § 365(d)(3) even if the debtor/tenant is billed for them within that period, because these courts conclude its intent was not to elevate prepetition obligations to administrative priority status.[18] The concept of "accrual" apparently derives from accounting principles rather than from the language of the Code, which uses the term "arise" rather than "accrue." The billing date or "performance date" approach instead looks to the date the lease requires the tenant to make the payment for rent or taxes, regardless of when they accrued.[19] The terms of the lease, therefore, determine when the "obligation" arises, irrespective of when an accountant might deem the expense for the obligation to have accrued.

The Ninth Circuit has yet to adopt one approach over the other. Some language in the Ninth Circuit's opinion in *TreeSource*[20] suggests the accrual approach, but the discussion of the accrual method in that opinion was merely dictum in a passage where the court was demonstrating why the accrual/performance date discussion was inapplicable. The court was noting that rent and tax obligations may accrue and be payable on different dates, but on the facts before the court the obligation to remove a concrete slab "accrued instantly," at the same time as the performance date, when the lease was terminated.[21] Regardless of whether that was deemed to be the accrual date or the performance date it occurred upon rejection and therefore was not within the scope of § 365(d)(3). Thus, the preference of the accrual approach over the performance date approach (or vice-versa) is still an open question in the Ninth Circuit.

The language and the purpose of § 365(d)(3) favor the billing date approach, and the analysis that has led courts to adopt the accrual approach is not well supported by either that language or purpose.

Section 365(d)(3) was added to the Bankruptcy Code in 1984. The effect and intent of this 1984 amendment were undoubtedly to elevate the landlord in the priority scheme of the Code, at least in terms of the timing of payment. Prior to that amendment, no administrative priority claims enjoyed any priority in the timing of payment over any others, and the

---

17. *See In re Phar–Mor, Inc.*, 290 B.R. 319, 323–26 (Bankr.N.D.Ohio 2003)(collecting cases supporting both rules).

18. *E.g., In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir.1998).

19. *E.g., In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3rd Cir.2001).

20. *K–4, Inc. v. Midway Engineered Wood Products, Inc. (In re TreeSource Industries)*, 363 F.3d 994, 998 (9th Cir.2004).

21. *Id.*

payment of all of them could be deferred until a plan is confirmed in a chapter 11 case, or the trustee makes distributions in a chapter 7 case. But the purpose and effect of the amendment was to "ensure *immediate* payment of lease obligations so that the landlord is not left providing un-compensated services." [22]

A look at the conference report for the bill containing § 365(d)(3) confirms this intent:

[The problem] is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease.... In this situation, the landlord is forced to provide current services-the use of its property, utilities, security, and other services-without current payment. No other creditor is put in this position.[23]

"It seems clear ... that Congress enacted § 365(d)(3) for the purpose of altering a pre-Code practice that had created a problem for landlords of non-residential property and that our task is to determine the nature of the change based on the text chosen." [24]

As noted, Congress did not define the new concept of "obligation." It has already been demonstrated that it would make no sense to equate "obligation" with "claim," because most lease claims, and certainly those that were the primary focus of the amendment, arise when the lease is executed prepetition and therefore would not be covered by § 365(d)(3).

It also would not make sense to equate "obligation" with liability on a cause of action. The Landlord would have a cause of action for all of the rent due for the entire remaining term of the lease, at least once there is a breach, but no one would conclude this entire amount due for the remainder of the lease is governed by § 365(d)(3) if that breach occurs postpetition, or that all rent falls outside of § 365(d)(3) if the breach occurred prepetition. On the other hand, it would seem that there could not be an obligation without there being a cause of action.

■ If the term "obligation" does not refer either to a state law liability or a claim under the Code, it probably was intended to be determined from the lease, *i.e.*, it refers to the date when the lease requires performance by the tenant. This makes the most sense for the most common situation to which § 365(d)(3) was intended to apply—to those rental installments that come due postpetition. Even though both a claim and a liability for that rent may exist prepetition and have "arisen" when the lease was signed, such rental obligations were clearly intended to be governed by § 365(d)(3). Thus it must be the terms of the lease that define when the obligation arises. And where the lease is unambiguous as to when payment or performance is due, as is usually the case with rent or a return condition, courts have little difficulty determining which of them are governed by § 365(d)(3) and which are not. But some other obligations under leases, such as the obligation to pay property taxes or to indemnify the landlord,

**22.** *Cukierman v. Uecker (In re Cukierman),* 265 F.3d 846, 850–51 (9th Cir.2001)(emphasis added).

**23.** H.R. Conf.Rep.No. 882, 98th Cong., *reprinted in* 1984 U.S.C.C.A.N. 576 (quoted in part in *Cukierman,* 265 F.3d at 851). The statement that no other creditor is in this position is not correct, because other parties to executory contracts may be in the same position of being required to provide current services or value while the debtor's obligation to pay for it is deferred.

**24.** *Montgomery Ward,* 268 F.3d at 211–212.

may not so unambiguously define payment or obligation dates.

Perhaps it is this potential ambiguity, or perhaps it is a reticence to elevate prepetition claims to administrative expense status, that has caused some courts to conclude that even if an amount of rent or property tax becomes due and payable postpetition according to the terms of the lease, it is not governed by § 365(d)(3) if that liability or claim accrued prepetition.

But this conflates obligations with claims and liabilities. And there is certainly no language in § 365(d)(3) that suggests an accrual analysis or that limits it to *claims* that would otherwise have administrative expense priority. Congress did not explicitly limit the application of § 365(d)(3) to administrative expense claims, which it clearly could have done. Courts that impose such a limitation under the accrual approach do so based solely on a presumed (but never articulated) legislative intent not to elevate the priority of what would otherwise be prepetition claims, such as for taxes that accrued prepetition that only became due and payable postpetition.[25]

Because the intent and effect of the 1984 amendment was to alter the priority scheme that otherwise would have governed the Landlord's "claim," the priority that otherwise would have applied to the Landlord's claim is not a good indication of how the new term "obligation" should be interpreted. Yet there is no better logic underlying the analysis of the courts that have adopted the accrual approach. If the payment date specified under the lease occurs postpetition and prerejection, these courts nevertheless parse the obligation so that only the portion of it that would have been an administrative priority must be paid pursuant to § 365(d)(3), and the portion that would have been a prepetition general unsecured claim need not be. And the only rationale for that distinction is not grounded anywhere in either the language of § 365(d)(3) or the concept of a lease obligation, but only in an assumption that Congress must not have intended to change the priorities. But that is most certainly what Congress intended to do, as the Ninth Circuit noted in *Cukierman.*

Moreover, one of the arguments for the accrual approach is simply wrong. The *Handy Andy* opinion attempted to demonstrate the absurd result from the billing date approach if a lease obligation required payment in advance, and that payment date fell prepetition. The opinion suggests the billing date interpretation of § 365(d)(3) would mean "the entire bill would become a pre-petition debt."[26] That is not correct. The landlord would still have an administrative claim for all the value provided postpetition, because nothing in § 365(d)(3) detracts from any administrative expense status. It would simply not be a § 365(d)(3) obligation, so payment would not have to be made within 60 days of the petition, but could be deferred until a plan is confirmed or a trustee makes distributions.

The ordinary meaning of the language of § 365(d)(3) provides no basis for the accrual approach. The language clearly contemplates that an obligation either arises within the specified time period, or it does

---

**25.** "There is no indication that Congress meant to go any further than to provide a landlord exception to 503(b)(1), and thus no indication that it meant to give landlords favored treatment for any class of pre-petition debts.... The context ... concerned a class of post-petition debts. That is all that Con-

gress was legislating in reference to." *Handy Andy, supra* note 18, at 1128. Ironically, the same opinion correctly notes that "the only thing that obscures this conclusion is the broad wording of section 365(d)(3)." *Id.*

**26.** *Id.*

not, as determined by the lease. And it clearly contemplates that if it does arise within the specified time period, then it must be performed, not partially performed.

Of course this means that what otherwise would have been general unsecured prepetition claims may be elevated to a new administrative priority, but there is no hint of any language to suggest that Congress did not intend that result.

### C. Application of Performance Date Analysis to Debtor's Indemnification Duties.

 Applying the performance date approach to the Debtor's obligation to indemnify the Landlord for defense costs, the Court concludes that this obligation arose postpetition, prerejection when the Landlord incurred the expense of defending the suit to foreclose the lien. Therefore the Landlord is entitled to an administrative claim for all of the attorneys' fees it incurred during that time period.

■ The tenant's obligation to indemnify the landlord for any attorney's fees it incurred postrejection, however, is not an obligation that arose within the specified time period, and therefore does not give rise to an administrative claim.

■ Finally, the tenant's obligation to indemnify the landlord against the lien, such as by posting a bond against it, either arose when the lien arose or when the landlord suffered a loss on account of the lien (and probably the latter). Simply because the landlord was at greater risk of loss arising from this lien after it was perfected, and after suit was brought to foreclose it, does not mean that the tenant's obligation only arose at that moment. To the contrary, as already concluded, the tenant breached its obligation to *keep the premises free from such liens* the moment

the work began to be performed. That was entirely prepetition. And since the landlord has neither suffered a judgment or made a payment on the lien, the obligation to *indemnify* against the lien did not arise prerejection, because an indemnification obligation cannot arise until there is a payment or judgment by the indemnitee. Therefore the obligation to indemnify the landlord against the lien did not arise within the time period covered by § 365(d)(3).

### III. Conclusion

For the foregoing reasons, the Landlord's administrative expense is limited to the attorneys' fees it incurred during the postpetition, prerejection time period. It is not entitled to an administrative expense for either the amount of the lien or the defense costs or other liability incurred outside of that time period.